United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 6, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-30999
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OTTO HENDRICK HORSTING, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(No. 1:05-CR-10006)

_____

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

      Otto Horsting pleaded guilty to one count of assault with a deadly weapon at the United States penitentiary in Pollack, Louisiana, in violation of 18 U.S.C. § 113(a)(3). The district court sentenced him to 100 months imprisonment. Horsting appeals two factual findings made in connection with the district court's calculation of his sentence; he also challenges the reasonableness of the sentence. For the reasons that follow, we affirm.

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

## I. FACTS AND PROCEEDINGS

Horsting was charged, along with William Schroeder and Scott Hudson, with two counts of assault with a deadly weapon in violation of 18 U.S.C. § 113(a)(3). Count one was for the assault of Tyrus Green, and count two was for the assault of Timothy Hall. Horsting pleaded guilty to count two.

In support of the guilty plea, FBI Agent Robert Ruby testified that white inmates Horsting, Schroeder, and Hudson were in a cell while black inmates Green and Hall were being escorted down the hall. The cell door had been manipulated to appear closed but was not. When Green and Hall passed, Horsting, Schroeder, and Hudson exited the cell, armed with prison-made knives that were crafted from hard plastic and were approximately ten to twelve inches long. Horsting attacked Hall, who sustained defensive type wounds to the arms and facial area, including one of his ears and his nose. During the assault, Schroeder yelled, "Get their eyes." Green lost vision in one of his eyes as a result of his injuries, but Hall's eyes were not injured.

According to the Presentence Investigation Report ("PSR"), Horsting was suspected of being involved with a gang known as the Dirty White Boys, a group advancing white supremacist ideas. Green stated that the assailants generally were shouting racial slurs during the assault. The PSR also stated that Hall, whom Horsting attacked, "received numerous puncture wounds to the head, neck, face and arms" but made a full recovery after treatment at the penitentiary medical facility.

The PSR calculated the base offense level at fourteen on the basis of the aggravated assault. Two levels were added because the assault required more than minimal planning; four levels were added for use of a dangerous weapon; four levels were added for the degree of bodily injury; and three levels were added for the selection of the victims based on their race. The resulting offense

2

level of twenty-seven was reduced by three for acceptance of responsibility. Based on the offense level of twenty-four and a criminal history category of VI, the sentencing guidelines range was 100 to 125 months imprisonment.

Horsting filed a motion for a downward departure on the basis that he committed the offense under coercion and duress. The district court denied the motion, sentenced Horsting to 100 months imprisonment, and concluded that there was "no reason to deviate from the sentence called for by application of the guidelines inasmuch as the facts as found are of a kind contemplated by the Sentencing Commission, and further consideration of the factors in 18 U.S.C. § 3553(a) yields no other compelling considerations not to apply the guidelines in this case." Horsting timely appeals, challenging the factual findings under U.S.S.G. §§ 2A2.2 and 3A1.1 and the reasonableness of the sentence.

## II. STANDARD OF REVIEW

After *Booker* as before, the district court's application of the guidelines is reviewed de novo. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). Findings of fact used in the calculation of a sentence are reviewed for clear error. *Id.* "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006) (internal quotation omitted). Additionally, we review the district court's ultimate sentencing decision for reasonableness. *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). If the district court sentences the defendant within a properly calculated guidelines range, that sentence is presumptively reasonable. *Id.* (citing *United States v. Alonzo*, 435 F.3d 551, 553–54 (5th Cir. 2006)).

## III. DISCUSSION

**A. Bodily Injury Enhancement**

U.S.S.G. § 2A2.2 provides for a base offense level of fourteen for aggravated assault. The provision further permits an increase in the offense level based on the degree of bodily injury. Specifically, the offense level is to be increased by three levels for bodily injury and five for serious bodily injury. U.S.S.G. § 2A2.2(b)(3)(A),(B). Where the degree of bodily injury falls between that of bodily injury and serious bodily injury, the guidelines provide for an increase of four levels. U.S.S.G. § 2A2.2(b)(3)(D). The PSR calculated Horsting's offense level using this intermediate four-level increase.

The guidelines define "bodily injury" and "serious bodily injury." *See* U.S.S.G. § 1B1.1. cmt. n.1. "Bodily injury" is defined as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1. cmt. n.1(B). "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1. cmt. n.1(L).

The district court adopted the PSR's offense level calculation, finding the four-level addition "certainly appropriate in this particular case based on the facts as presented as we all understand them on the day of the incident." Horsting argues that the facts stated in the PSR do not suggest a degree of injury greater than bodily injury. Horsting states that facts only show that the wounds were "painful and obvious," and he points out that Agent Ruby testified at the guilty plea hearing that Hall's wounds were defensive and not life-threatening. Horsting also references Hall's Inmate Injury Assessment which described Hall's wounds as lacerations, not stab wounds as in the PSR. At

4

sentencing, defense counsel suggested that Hall's hospitalization for the injuries was probably only protocol and did not reflect the seriousness of the injury.

If bodily injury is defined as an injury that is "painful and obvious" and requires medical attention, and if serious bodily injury is defined as an injury that is "extremely painful" and requires surgery or hospitalization, it is plausible based on the record that Hall's injuries fell between these parameters. The record shows that Hall sustained numerous wounds to his face and arms. Whether they are described as puncture wounds in the PSR or as lacerations in the Inmate Injury Assessment, medical attention was required, and Hall was taken to the hospital. The district court's determination that these wounds were more than merely painful and obvious is plausible since they resulted from a stabbing. *Cf. United States v. Jefferson*, 258 F.3d 405, 413–14 (5th Cir. 2001) (finding no clear error when the district court determined that bruises, scrapes, and a "knot" on the head constituted "bodily injury" under § 2A2.2); *United States v. Le*, 178 F. App'x 386, 388 (5th Cir. 2006) (unpublished) (finding no clear error when the district court determined that a stab wound requiring two layers of sutures constituted "serious bodily injury" under § 2A2.2). Horsting urges that these wounds were not life threatening, but the four-level enhancement does not address life threatening injury; another provision does. *See* U.S.S.G. § 2A2.2(b)(3)(C) (providing for a seven-level enhancement where the injury is life threatening). The district court's finding was not clearly erroneous.

**B. Enhancement for Racially Motivated Attack**

Under U.S.S.G. § 3A1.1(a), if the district court determines beyond a reasonable doubt that the defendant intentionally selected a victim based on the victim's race, then the offense level is to be increased by three levels. The district court applied this victim-related enhancement. Horsting

argues that Schroeder and Hudson orchestrated the attack because of the victims' race but that his motivation was only self-preservation; he contends that he participated in the attack due to coercion and duress. He points to Schroeder's sentencing hearing, a transcript of which he attached as an exhibit to his objections to the PSR, during which Schroeder stated that Horsting would participate "period." Horsting also emphasizes that nothing in the record suggests that he would have carried out the attack in the absence of the two co-attackers.

At sentencing, the government conceded that, among the three defendants, "the case of proving intent or the racial motivation is weakest" for Horsting. The government continued, however, noting that the evidence was clear that the attack was racially motivated and that, as the video showed, Horsting actively participated in the racially-motivated event. The district court recognized that the attack was "entirely a racially motivated incident from its beginning planning to its end result." The district court found Horsting's argument that he was coerced unpersuasive because the video showed that the attack lasted a "substantial period of time" and that at no point did Horsting withdraw from the attack. The district court stated, "[Horsting] could have stopped sooner. He could have done a number of things that would indicate he did not intend the consequences of the planning and the execution of this assault."

We conclude that the district court's finding that Horsting's attack was racially motivated beyond a reasonable doubt was plausible in light of the record as a whole. Horsting and the other attackers were likely involved with a gang called the Dirty White Boys, and the attackers were shouting racial slurs during the assault. According to the PSR, Horsting was aware of the motivation for the assault. Horsting does not dispute that the attack was planned for retaliatory reasons against black inmates. As the parties discussed at sentencing, the prison video showed that Horsting actively

6

participated in the attack. The district court emphasized that Horsting did not retreat or put down his weapon even while the guards called for additional security as reinforcement to stop the attacks. The district court's finding that Horsting's attack was racially motivated did not amount to clear error.

**C. Reasonableness of Sentence**

Horsting argues that his sentence is unreasonable in light of the 18 U.S.C. § 3553(a) factors, particularly noting the characteristics of the defendant and circumstances of the offense. Horsting discusses his history of mental health problems; he also points out that Schroeder, at Schroeder's sentencing, credited Horsting and Hudson with preventing the attacks from becoming worse because Schroeder admitted that he would have killed the victims were he able. Horsting quotes the provision of 18 U.S.C. § 3553(a) instructing a court to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes set forth in the statute. He argues that a sentence under 100 months imprisonment would be sufficient to comply with the purposes of the statute, suggesting that his mental health history and his role in the offense provide reasons for a below-guidelines sentence.

As discussed under the first two issues, Horsting has not demonstrated that the sentence was improperly calculated, and, where the district court sentences a defendant within a properly calculated guidelines range, the sentence is presumptively reasonable. *United States v. Candia*, 454 F.3d 468, 473 (5th Cir. 2006). Where a sentence is imposed within a properly calculated range, it will be rare for this court to say that a sentence is unreasonable. *United States v. Johnson*, 445 F.3d 793, 798 (5th Cir. 2006).

Horsting's case is not one of the rare instances where we will find the sentence, which falls within a properly calculated guidelines range, to be unreasonable. At sentencing, the district court

7

stated that it found no reason to deviate from the sentence called for by application of the guidelines and that consideration of the § 3553(a) factors also offered no reason to deviate from the guidelines. The sentence was at the low end of the range at 100 months. Horsting's argument that the district court insufficiently considered his mental health history and role in the offense does not overcome the presumption of reasonableness where the district explicitly stated that it considered the § 3553(a) factors and exercised reasonable discretion in the weight afforded to those factors.

## IV.  CONCLUSION

The district court's factual findings were not clearly erroneous, and the ultimate sentencing decision was reasonable. The judgment of the district court is AFFIRMED.