# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-40160

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LIONEL ANDERSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH and SOUTHWICK, Circuit Judges, and RODRIGUEZ, District Judge.[1]

JERRY E. SMITH, Circuit Judge:

Lionel Anderson was convicted of being a felon in possession of a firearm. He appeals his conviction and sentence. We affirm.

---

[1] District Judge of the Western District of Texas, sitting by designation.

I.

A.

Officers Sonny Martin and Joseph Hooten of the McKinney, Texas, police department responded to a call at 906 Murray Place. As they drove away afterwards, they heard a shot fired. They called for backup and determined that the shot had come from an apartment in the 905 Murray Place duplex. The bullet had passed through the screen on the side bedroom window and hit the corner of the duplex at 903 Murray Place; if it had been fired several inches to the left, according to expert trajectory analysis presented at trial, it could have struck Martin's marked police vehicle.

After other officers arrived, Martin and Hooten went to 905 Murray Place, knocked, and ordered the occupants out. A few minutes later, Kenneth Whitley, Frankie Brown, and Anderson emerged. Anderson was wringing his hands, which were wet and smelled of soap—he explained to the officers that he had just washed them—and when he had difficulty following the officers' instructions, he explained that his ears were ringing.[2] The officers performed a protective sweep inside the residence and found a plastic rifle-sized gun case containing ammunition and a crack pipe. Whitley directed the officers to an air vent, where the officers found a Norinco SKS rifle.

Whitley, who lived in the apartment and whose name was on its lease, testified that he had seen Anderson bring guns and the gun case to the apartment on various occasions—including, apparently, the day of the incident—and that he had heard Anderson wonder out loud, just before the shooting, "what them mother******s would think if I shot a hole in" the police car parked across the street. Whitley said he had been in the bathroom when the shot was fired, but he saw Anderson and Brown leaving the bedroom, the butt of the rifle visible

---

[2] Officer Justin Lugannani, who testified to this fact, interpreted this as evidence that Anderson had been in the room, at least, when the shot was fired.

under Anderson's jacket. Anderson hustled Whitley and Brown into the bathroom to give them the crack cocaine he had in his possession. Whitley then saw Anderson hide the gun in the air vent after the shooting, and Anderson urged him not to open the apartment door to the police.

Anderson was arrested, and on the way to jail he told Martin that because the police had not found a shell casing, they had no case against him.[3] One of Anderson's fellow inmates, Christopher Ramsey, testified that in jail, Anderson had admitted to having "shot at a cop." Ramsey told the jury that Anderson described covering up the shot by washing gunshot residue off his hands, placing the gun in the air vent, and hiding the shell case in his rectum until he could flush it away in jail. Ramsey also testified that he had bought crack cocaine from Anderson before they were incarcerated together and that Anderson had shown him pictures of guns he had bought as a result of a disagreement with a rival drug dealer.[4]

## B.

Anderson was charged with being a felon in possession of (1) a firearm and (2) ammunition, both in violation of 18 U.S.C. § 922(g)(1). At the close of evidence, he moved for a judgment of acquittal, which the district court denied. Anderson presented no evidence. The jury found him guilty on both counts.

The presentence report ("PSR") established a base offense level of 22, including an increase under U.S.S.G. §§ 2K2.1(a)(3) and 4B1.2(a) because his previous felony conviction was for a crime of violence ("COV"), specifically, assault of a public servant in violation of TEX. PEN. CODE § 22.01(a)-(b). The PSR recom-

---

[3] This, among other belligerent comments he made, was audio-recorded and played for the jury. Anderson repeated this statement in other contexts, for example during his interview with Detective Gerald Rutledge.

[4] Ramsey said that Anderson had referred to the rival dealer as "Black." Whitley initially thought Anderson was referring to Black when he spoke of shooting someone's car.

mended a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6) for using or possessing the firearm in connection with another felony, namely, the manufacture or delivery of a controlled substance; it also applied a six-level increase pursuant to U.S.S.G. § 3A1.2(c)(1) for assaulting a police officer during the course of the offense "in a manner creating a substantial risk of serious bodily injury" while "knowing or having reasonable cause to believe that" the person was a police officer.[5]

The PSR placed Anderson in criminal history category VI, yielding a guideline range of 210-262 months' imprisonment. The district court adopted the PSR in its entirety and sentenced Anderson to 120 months for each count—the statutory maximum—to be served consecutively, for a total of 240 months, plus a three-year period of supervised release and $200 in special assessments.

II.

A.

Anderson asserts that 18 U.S.C. § 922(g) impermissibly infringes on his Second Amendment right to keep and bear arms. We review the constitutionality of federal statutes de novo. United States v. Rasco, 123 F.3d 222, 226 (5th Cir. 1997).

Anderson's argument, as he acknowledges, was foreclosed in this circuit by United States v. Darrington, 351 F.3d 632, 633-34 (5th Cir. 2003) (holding that § 922(g) "does not violate the Second Amendment"). He attempts to revive it by drawing our attention to United States v. Heller, 128 S. Ct. 2783 (2008). But Heller provides no basis for reconsidering Darrington.[6] We therefore reaffirm Darrington and the constitutionality of § 922(g).

---

[5] Anderson objected to both increases.

[6] See Heller, 128 S. Ct. at 2816-17 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]").

B.

Anderson raises, in effect, two arguments purporting to show insufficiency of evidence: (1) that the "government did not affirmatively link" him to the firearm or ammunition and (2) that Whitley was an unreliable witness. Anderson faces a heavy burden. We determine "whether the jury's verdict was reasonable, not whether we believe it to be correct," reviewing the evidence "in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction;" if the evidence would permit "a rational fact finder to find every element of the offense beyond a reasonable doubt," we must affirm. United States v. Redd, 355 F.3d 866, 872 (5th Cir. 2003) (internal citations and quotation marks omitted). "Our review of the sufficiency of the evidence does not include a review of the weight of the evidence or of the credibility of the witnesses." United States v. Myers, 104 F.3d 76, 78-79 (5th Cir. 1997). We review de novo the denial of a motion for judgment of acquittal. Id.

"In order to convict one for felon in possession of a firearm, the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm." United States v. Ybarra, 70 F.3d 362, 365 (5th Cir. 1995) (citing United States v. Dancy, 861 F.2d 77, 81 (5th Cir. 1988)). The first two prongs are not in question.[7] Anderson claims instead that because he was found with other men, all of whom had access to the firearm and ammunition, in an apartment that did not belong to him, with no physical evidence directly connecting him to the rifle or ammunition, there was insufficient evidence to show knowing possession.

Anderson analogizes this case to those in which a defendant is found, to-

---

[7] The government's expert testified that the rifle had been manufactured in China and that the ammunition came from China and Illinois. The gun and ammunition had therefore traveled in interstate and foreign commerce. Anderson stipulated his status as a convicted felon.

gether with others, in a place where all had access to a firearm and where the government establishes no more than "proximity" of a firearm to the defendant, bringing neither physical nor testimonial evidence specifically linking the defendant to the firearms or establishing his knowledge of their presence. In such circumstances, the government has failed to prove "constructive" possession of the firearm—i.e., "ownership, dominion, or control over the contraband itself or dominion or control over the premises in which the contraband is concealed"— and acquittal is required as a matter of law.[8]

But that analogy fails. Taken together, Anderson's authorities establish that possession can be established by (1) actual, physical possession of the firearm, (2) sole control and occupancy of a place where a firearm is found, or (3) joint occupancy of a place where a firearm is found, combined with some evidence of the defendant's access to and knowledge of the firearm. See Mergerson, 4 F.3d at 348-49.

The government's evidence was sufficient to establish possession by either the first or third standard. The jury heard Whitley testify that he had seen Anderson with the gun case, and perhaps the gun itself, at times before the shooting; that Anderson had made remarks about shooting at the police on the date of the charged event; that after hearing a gunshot, Whitley had seen Anderson, carrying the gun, come out of the room from which the shot was fired; and that Whitley saw Anderson hide the gun in the air vent, where the police found it.

Ramsey's testimony corroborated Whitley's account and provided an explanation, consistent with gun possession, of Anderson's wet, soapy hands. The jury also heard the recording of Anderson's taunting the officers with their failure to find a shell casing and Ramsey's testimony as to what Anderson said

---

[8] See United States v. Mergerson, 4 F.3d 337, 348-49 (5th Cir. 1993) (quoting United States v. Smith, 930 F.2d 1081, 1085 (5th Cir. 1991)); United States v. Soto, 779 F.2d 558, 560 (9th Cir. 1986).

he had done with the casing. In light of this, Anderson's assertion that "[t]he government did not affirmatively link the firearm to Mr. Anderson, beyond the evidence of his presence in the residence where the firearms were found," is obviously wrong.

Anderson's attack on Whitley's reliability as a witness fails also. Whitley admitted on direct examination that he is a drug user, that he is mentally ill, that he takes psychotropic medication daily, and that he is a convicted felon. He allowed Anderson to stay in his apartment for weeks at a time, apparently accepting crack cocaine as rent. Whitley also suffered from memory loss and brain damage after a suicide attempt in 1991. As a result, Whitley is unable to support himself and receives government disability payments. On the day of the incident, he woke up at 6 p.m. and immediately started smoking crack cocaine, including just before the police came to the door.

Certainly, given Whitley's history of drug abuse and mental illness, he is not a model witness, but determinations of credibility are for the jury. See Myers, 104 F.3d at 78-79. At any rate, Whitley's testimony was consistent with Ramsey's account of Anderson's statements made while in jail.

### III.

Where a defendant objects at sentencing, we review the district court's findings of fact for clear error and its conclusions of law de novo. United States v. Caldwell, 448 F.3d 287, 290 (5th Cir. 2006). The sentence is reviewed for reasonableness. Id. Where the defendant did not object, we review only for plain error, which requires that "there is (1) error, (2) that is plain, and (3) that affects substantial rights;" the error must also have "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005) (internal citations and quotation marks omitted). Even in the context of plain error, we consider the "error" prong de novo.

United States v. Garza-Lopez, 410 F.3d 268, 272-73 (5th Cir. 2005).

A.

The sentencing guidelines provide for a base offense level of 22 where a defendant convicted of a § 922(g)(1) violation is found with a "semiautomatic rifle that is capable of accepting a large capacity magazine" and has previously been convicted of a COV. See U.S.S.G. § 2K2.1(a)(3). The PSR determined that the rifle involved here is such a firearm and that Anderson's conviction of assault of a public servant in violation of TEX. PEN. CODE § 22.01(b)(1) is a COV. Anderson now claims that his prior conviction is not in fact a COV. Because he did not object to his base offense level in the district court, we review for plain error. The applicable definition of COV provides that

> (a) [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).[9] The Texas statute under which Anderson was convicted reads, in relevant part,

> (a) A person commits an offense if the person:
>
> > (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]

---

[9] See also U.S.S.G. § 4B1.2 cmt. n.1. "Other offenses are included as 'crimes of violence' if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another."

. . .

> (b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> > (1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant[.]

TEX. PEN. CODE § 22.01(a)-(b). Briefly, Anderson's argument is that because he could have been convicted under § 22.01(b)(1) for reckless conduct, his conviction could not have been of a COV within the meaning of the guidelines.

Anderson relies on cases holding that, in some contexts, the term "crime of violence" excludes crimes that were or could have been committed recklessly.[10] That argument confuses U.S.S.G. § 4B1.2, the applicable definition, with such guidelines provisions as U.S.S.G. § 2L1.2(b), which applies a different definition of COV in the context of unlawfully entering or remaining in the United States. Section 2L1.2 COV's are those that fall into an enumerated list or that have "as an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G § 2L1.2 cmt. n.1(B)(iii). Many courts have held that "use" denotes a mens rea of intent or knowledge and so excludes crimes committed recklessly. See Zuniga-Soto, 527 F.3d at 1121-24.

Section 4B1.2(a), the definition we apply here, sweeps more broadly. It includes a residual clause that comprehends crimes "involv[ing] conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a)(2). Unlike U.S.S.G. § 2L1.2, then, § 4B1.2(a)(2) does not necessarily require that intentional or knowing application of force have been an element of the previous

---

[10] See, e.g., United States v. Zuniga-Soto, 527 F.3d 1110, 1121-24 (10th Cir. 2008) (stating that violation of TEX. PEN. CODE § 22.01(b)(1) is not a COV under U.S.S.G. § 2L1.2).

9

felony, so long as there is a "risk." Cases such as Zuniga-Soto, in which the guideline definition of COV is much narrower, do not apply.

There is, naturally, considerable debate about whether particular crimes fall within the U.S.S.G. § 4B1.2(a)(2) definition.[11] To have violated TEX. PEN. CODE § 22.01(b)(1), though, Anderson must have actually "cause[d] bodily injury to another" with a mens rea of at least recklessness. Certainly this is a felony presenting more than a "serious potential risk of physical injury to another." Physical harms committed recklessly fit naturally with the offenses—for example, arson and crimes involving explosives—actually mentioned in § 4B1.2-(a)(2).[12] The precise mens rea for violations of § 22.01(b)(1), then, may not matter at all for purposes of § 4B1.2(a); the violation would be a COV in any event.

But even if the Texas statute's relationship to U.S.S.G. § 4B1.2(a)(2) were ambiguous, Anderson would still have committed a COV. Under Charles, 301 F.3d at 314, we may look to "the face of the indictment" to determine whether "the crime itself or the conduct specifically charged posed this serious potential risk."[13] "When a statute provides a list of alternative methods of committing an offense, we may look to the charging papers to determine by which method the crime was committed in a particular case." United States v. Riva, 440 F.3d 722, 724 (5th Cir. 2006).

According to the indictment, Anderson was convicted not of mere recklessness but of "intentionally and knowingly caus[ing] bodily injury to [a peace offi-

---

[11] See, e.g., United States v. Charles, 301 F.3d 309 (5th Cir. 2002) (en banc) (simple motor vehicle theft not a COV within § 4B1.2(a)(2)).

[12] See, e.g., United States v. DeSantiago-Gonzalez, 207 F.3d 261, 264 (5th Cir. 2000) (misdemeanor DWI a COV); United States v. Claiborne, 132 F.3d 253, 256 (5th Cir. 1998) ("attempted unauthorized entry of an inhabited dwelling" a COV).

[13] See United States v. Rodriguez-Jaimes, 481 F.3d 283, 286-87 (5th Cir. 2007); United States v. Insaulgarat, 378 F.3d 456, 468-69 (5th Cir. 2004). See also U.S.S.G. § 4B1.2 cmt. n.1 (COV if the "expressly charged" conduct "by its nature presented a serious potential risk of physical injury to another").

cer], by a head butt[.]" Section 4B1.2(a)(2) easily comprehends this prior conviction. The district court committed no error.

## B.

The PSR recommended, and the district court applied, a six-level upward adjustment on finding that Anderson, "knowingly or having reasonable cause to believe that a person was a law enforcement officer," had "attempt[ed] to assault" the officers when he fired a shot in their direction and thereby "created a substantial risk of serious bodily injury." Anderson objected in the district court and argues that there is insufficient evidence to support the enhancement.

The six-level increase was pursuant to U.S.S.G. § 3A1.2, which provides,

(c) If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—

(1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . .

increase by 6 levels.

Anderson asserts that the increase can apply only if there is either actual injury to the officer or specific intent to injure him, relying on U.S.S.G. § 3A1.2(c)(1) cmt. n.4(A) (stating that the enhancement "applies in circumstances tantamount to aggravated assault"). There was no actual injury here, and Anderson claims the evidence is insufficient to establish attempt.

To find attempt, however, the district court need only to have found, by a preponderance of the evidence, that Anderson fired his shot intending to hit the police car. The district court found that Anderson shot the gun "toward the police officer" and that his miss was "fortuitous."

The government presented the testimony of Whitley, who claimed that An-

derson had said he planned to shoot at the police car, and Ramsey, who testified that Anderson had said he had "shot at a cop." The government's ballistics expert said that the bullet Anderson fired, having struck the edge of the building next door, had narrowly missed Martin's police car. A hit would certainly have created a substantial risk of injury for the driver. That evidence is considerably more than the merely reckless conduct in United States v. Hampton, 346 F.3d 813, 814 (5th Cir. 2003) (denying an enhancement under the predecessor to § 3A1.2(c)(1)), to which Anderson draws our attention.

"Shooting at" a police officer is strong evidence of aggravated assault. See United States v. Andrade, 94 F.3d 9, 15 (1st Cir. 1996). Drawing police cars into a high-speed chase and "ma[king] threatening moves with his car towards the police vehicles and almost str[iking]" one police car has supported a finding of aggravated assault against law enforcement officers as well.[14] Given the evidence, the district court did not clearly err in finding that Anderson intended to injure the officers, so it properly applied the enhancement.

## C.

The PSR recommended, and the district court applied, a four-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(6)[15] on finding that Anderson possessed the firearm "in connection with" the felony offense of manufacture or delivery of a controlled substance. Anderson objected in the district court and contends there is insufficient evidence to support the adjustment.

Section 2K2.1(b)(6) reads, in relevant part,

If the defendant used or possessed any firearm or ammunition in

---

[14] See United States v. Gillyard, 261 F.3d 506, 510 (5th Cir. 2001) (applying a three-level enhancement under the predecessor to § 3A1.2(c)(1)).

[15] This section is identical to the former U.S.S.G. § 2K2.1(b)(5), which was recodified in 2006. Most case authority refers to the prior version.

connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

A portion of commentary added to the guidelines in 2006, and so applicable here, explains what is meant by "in connection with": "Subsection[] (b)(6) . . . appl[ies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense[.]" U.S.S.G. § 2K2.1 cmt. n.14(A).

That commentary reinforces this court's prior practice.[16] The government, then, needed to establish—by a preponderance of the evidence—another felony offense, that the firearm "facilitated, or had the potential of facilitating" it, and that Anderson used or possessed the firearm in connection with that offense.

The government presented considerable evidence linking the gun to drug distribution. Witnesses testified that Anderson had bought guns as a result of a territorial dispute with "Black," his rival. Anderson was apparently on a crack-cocaine-delivery errand when he brought the gun to Whitley's apartment, and he provided Whitley and Brown with crack before and after he fired the shot. The gun case, in which Anderson evidently carried the rifle, contained a crack pipe when the police found it. A police dog responded to the gun, indicating that it had drug residue on it.

All this is certainly sufficient to support the finding that "this gun was possessed in connection with [Anderson's] drug-trafficking business." Condren, 18 F.3d at 1195. When a loaded firearm is found in close physical proximity to nar-

---

[16] Compare United States v. Armstead, 114 F.3d 504, 511-12 (5th Cir. 1997) (§ 2K2.1 enhancement applied; burglary of a business); United States v. Condren, 18 F.3d 1190, 1195-1200 (5th Cir. 1994) (§ 2K2.1 enhancement applied; drug distribution), with United States v. Houston, 364 F.3d 243, 249-50 (5th Cir. 2004) (no § 2K2.1 enhancement applied; possession of forged identification documents); United States v. Fadipe, 43 F.3d 993, 994-95 (5th Cir. 1995) (no § 2K2.1 enhancement applied; bank fraud).

cotics, readily available to the defendant, a connection will usually be found.[17] The fact that no drugs were found on Anderson's person and no drug charges were filed does not avail him.[18]  Finding that Anderson possessed the gun "in connection with" his drug distribution activities was entirely reasonable, and the district court did not clearly err.

## D.

Anderson argues that his sentence is unreasonable.  After United States v. Booker, 543 U.S. 220, 261 (2005), we review sentences for "reasonableness," gauged in accordance with the factors listed in 18 U.S.C. § 3553(a).  United States v. Smith, 440 F.3d 704, 706-07 (5th Cir. 2006).  Sentences within the guideline range are presumptively reasonable when being reviewed on appeal. United States v. Newson, 515 F.3d 374, 379 (5th Cir.), cert. denied, 128 S. Ct. 2522 (2008).[19]  This presumption ordinarily takes the form of abuse-of-discretion review of procedurally sound sentences.  Id. (citing Gall v. United States, 128 S. Ct. 586, 597 (2007)).  Anderson appears not to have objected in the district court to the reasonableness of his sentence as such, so review is for plain error.  See United States v. Peltier, 505 F.3d 389, 391-92 (5th Cir. 2007), cert. denied, 128

---

[17] See Condren, 18 F.3d at 1199-1200.

> [I]t must be kept in mind that Condren was actively involved in distributing co-caine; it would be more than reasonable to infer that he would know, or assume, that other persons would know, or assume, that he kept drugs in his home, and that he would be concerned that those persons might seek to steal them.

Id. at 1198-99.

[18] See Condren, 18 F.3d at 1194 n.11 ("Of course, the defendant need not be charged with or convicted of the other felony used as the basis for the enhancement."); U.S.S.G. § 2K2.1 cmt. n.14(C) (stating that enhancement may apply "regardless of whether a criminal charge was brought, or a conviction obtained").

[19] See Nelson v. United States, No. 08-5657, 2009 WL 160585, at *1 (U.S. Jan. 26, 2009) (per curiam).

S. Ct. 2959 (2008) (establishing plain error review where defendant has not objected to reasonableness).

The 240-month sentenceSSthe statutory maximumSSis well within the guideline range of 210-262 months.  The district court considered the relevant factors and reached a sentence consistent with the presumption of reasonableness.  "When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required."  Mares, 402 F.3d at 519.  Anderson has not noted any mitigating circumstances that would justify a below-guideline range consistent with 18 U.S.C. § 3553(b), and he offers little beyond the conclusional assertion that his sentence is "longer than necessary" under § 3553(a).

AFFIRMED.