TYMKOVICH, Circuit Judge,
concurring.
I join in Judge Murphy’s cogent opinion, but write separately regarding certain issues raised by our Second Amendment holding.
District of Columbia v. Heller instructs that it not be taken “to cast doubt on longstanding prohibitions on the possession of firearms by felons.” — U.S. —, 128 S.Ct. 2783, 2816-17, 171 L.Ed.2d 637 (2008). This instruction, as McCane points out, is dictum. But Supreme Court dicta binds us “almost as firmly as ... the Court’s outright holdings.” Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir.2008) (quoting Gaylor v. United States, 74 F.3d 214, 217 (10th Cir.1996)). This is particularly so where, as here, the dictum is recent and not enfeebled by later statements. See id.; see also Carlton F.W. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1372 (2009) (“Although [HelleFs ] exceptions are arguably dicta, they are dicta of the strongest sort.”). I therefore concur with the majority in rejecting McCane’s Second Amendment challenge.
I write separately, though, for two reasons. The first is to note, given the undeveloped history of felon dispossession laws, the possible tension between HelleFs dictum and its underlying holding. The second reason is to express concern that the *1048 dictum inhibits lower courts from exploring the contours of Heller and its application to firearm restrictions.
My first point is that the felon dispossession dictum may lack the “longstanding” historical basis that Heller ascribes to it. Indeed, the scope of what Heller describes as “longstanding prohibitions on the possession of firearms by felons,” 128 S.Ct. at 2816-17, is far from clear. To be sure, some sources would support the proposition. See Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of Judges Reign?, 36 Okla. L.Rev. 65, 96 (1983) (“Colonial and English societies of the eighteenth century ... excluded ... felons [from possessing firearms].”); Don B. Kates, Jr., Handgun Prohibition and the Original Meaning of the Second Amendment, 82 Mich. L.Rev. 203, 266 (1983) (“Founders [did not] consider felons within the common law right to arms.”).
But more recent authorities have not found evidence of longstanding dispossession laws. On the contrary, a number have specifically argued such laws did not exist and have questioned the sources relied upon by the earlier authorities. See, e.g., Larson, supra, at 1374 (finding Kates’s evidence of longstanding felon dispossession “surprisingly thin”); C. Kevin Marshall, Why Can’t Martha Stewart Have a Gun?, 32 Harv. J.L. & Pub. Pol’y 695, 709-10, 714 (2009) (challenging the evidence cited by both Dowlut and Kates).[1] Instead, they assert, the weight of historical evidence suggests felon dispossession laws are creatures of the twentieth — rather than the eighteenth — century. See, e.g., Marshall, supra, at 698-713 (comprehensively reviewing the history of state and federal dispossession laws); Larson, supra, at 1374 (“[S]o far as I can determine, no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms.”); Adam Winkler, Heller’s Catch 22, 56 UCLA L.Rev. 1551,1561,1563 (2009) (same). Together these authorities cast doubt on a categorical approach to felon dispossession laws.
This uncertain historical evidence is problematic in light of Heller’s Second Amendment interpretation. Central to the Court’s holding are a detailed textual analysis and a comprehensive review of the Second Amendment’s meaning at the time of its adoption. Heller, 128 S.Ct. at 2788-816. After conducting this analysis and review, Heller concludes the right “to keep and bear arms” is a corollary to the individual right of self-defense. E.g., id. at 2817 (“[T]he inherent right of self-defense has been central to the Second Amendment right.”). At the “core” of the Second Amendment right, the Court found, is self-defense in the home. Id. at 2818.
Knowing the meaning of the Second Amendment right and having identified its individual nature, the issue becomes what limits the government may place on the right. Indeed, this is where the Second Amendment rubber meets the road. The restrictive firearm ownership and licensing laws at issue in Heller violated the right, the Court found. Id. at 2817-21. But what about other laws? For example, the broad scope of 18 U.S.C. § 922(g)(1)— which permanently disqualifies all felons from possessing firearms — would conflict with the “core” self-defense right embod *1049 ied in the Second Amendment. Non-violent felons, for example, certainly have the same right to self-defense in their homes as non-felons. The validity of § 922(g)(1) was not at issue in Heller, so presumably the lower courts would be left to sort out this restriction — as well as other restrictions — and to wrestle with any complexities in applying Heller. But the issue was not really left to the lower courts.
In what could be described as the opinion’s deus ex machina dicta, Heller simply declared that nothing in it “cast[s] doubt on longstanding prohibitions on the possession of firearms by felons” or various other gun control laws. 128 S.Ct. at 2816-17. And that was it. These provisions, and the various regulations they encompassed, were supported without any explanation of how they would fare in light of the Second Amendment’s original meaning. See id. at 2827 (Stevens, J., dissenting); id. at 2869-70 (Breyer, J., dissenting).[2] The reason the Court inserted these exceptions is unclear. Given the uncertain pedigree of felon dispossession laws, though, the dictum sanctioning their application while simultaneously sidestepping the Second Amendment’s original meaning is odd. One wonders, at least with regard to felon dispossession, whether the Heller dictum has swallowed the Heller rule.
Heller’s felon dispossession dictum is particularly noteworthy considering the scope of the § 922(g)(1) ban. The statute prohibits firearm possession by any person convicted of a felony, irrespective of the nature of the felony, the length of time elapsed since the felony conviction, and the treatment of the felony by the state in which the felon resides. Every individual right has exceptions, of course, and the application of § 922(g) to a violent felon such as Mr. McCane would appear appropriate under any Second Amendment reading. After all, felons lose out on fundamental rights such as voting and serving on juries, and face discrimination that need only survive rational basis review. The question may be less clear, however, where the underlying felony is non-violent, such as financial fraud, perjury, or misleading federal investigators. But § 922(g)(1) encompasses these (and other) non-violent felons as well, permanently restricting their Second Amendment right to self-defense.
This brings me to my second point. The Court’s summary treatment of felon dispossession in dictum forecloses the possibility of a more sophisticated interpretation of § 922(g)(l)’s scope. Applying Hellenes individual right holding to various regulations would be complicated, and it is of course possible (if not probable) that different courts would articulate different standards. Already a number of commentators have considered and proposed approaches to the existing gun laws and the proper level of constitutional scrutiny. See, e.g., Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda, 56 UCLA L.Rev. 1443 (2009); Marshall, supra, at 728-31; Lar *1050 son, supra, at 1379-1382. But the existence of on-point dicta regarding various regulations short-circuits at least some of the analysis and refinement that would otherwise take place in the lower courts. In this case, for example, we need not address the standard of review applicable to gun dispossession laws — strict scrutiny, intermediate, rational basis, or something else — or the examination of the governmental interests in light of the standard of review.[3]
Rather than seriously wrestling with how to apply this new Second Amendment rule, therefore, courts will continue to simply reference the applicable Heller dictum and move on. And in light of the Supreme Court’s clear direction, this is perhaps how it should be. After all, “our job as a federal appellate court is to follow the Supreme Court’s directions, not pick and choose among them as if ordering from a menu.” Surefoot LC, 531 F.3d at 1243. I nevertheless wonder whether Second Amendment law would have been better served if the regulations Heller addressed in dicta had been left to later cases.

. While Mr. Kates does not address this evidence specifically, he maintains "there is ample historical support for excluding [felons] from the right to arms: Nations which accepted the right to arms invariably extended that right only to virtuous citizens; and at common law felons were 'civilly dead,' having lost all rights including the right to possess property of any kind.” Don B. Kates, A Modem Historiography of the Second Amendment, 56 UCLA L.Rev. 1211, 1231 n. 100 (2009).

. In one sense, Heller did overturn Tenth Circuit case law on this issue. Previously, we upheld the felon-in-possession statute against Second Amendment attack under a collective-rights theory — i.e., that felons have no right to possess firearms that are not reasonably connected to military service. See, e.g., United States v. Baer, 235 F.3d 561, 564 (10th Cir. 2000) (holding that the felon-in-possession statute does not violate the Second Amendment "absent evidence that [the firearms in question] in any way affect the maintenance of a well regulated militia”); see generally David B. Kopel, The Second Amendment in the Tenth Circuit: Three Decades of (Mostly) Harmless Error, 86 Denv. U.L.Rev. 901 (2009). The Heller dictum, however, affirms the ultimate disposition — i.e., that the Second Amendment does not protect a felon’s right to possess firearms.

. By my count, at least six other circuits have rejected post-Heller challenges to the 18 U.S.C. § 922(g)(1) felon dispossession statute. Almost all these decisions cursorily cite the Heller dictum, and almost all are unpublished. See, e.g., United States v. Anderson, 559 F.3d 348, 352 n. 6 (5th Cir.2009); United States v. Brye, 318 Fed.Appx. 878, 879 (11th Cir.2009) (unpublished); United States v. Frazier, 314 Fed.Appx. 801, 807 (6th Cir.2008) (unpublished); United States v. Brunson, 292 Fed.Appx. 259, 261 (4th Cir.2008) (unpublished); United States v. Gilbert, 286 Fed.Appx. 383, 386 (9th Cir.2008) (unpublished); United States v. Irish, 285 Fed.Appx. 326, 327 (8th Cir.2008) (unpublished).