**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Stephen BRENNER, Defendant–**
**Appellant.**

**No. 11–50432.**

United States Court of Appeals,
Fifth Circuit.

April 30, 2012.

Joseph H. Gay, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, San Antonio, TX, for Plaintiff–Appellee.

---

John Michael Economidy, Esq., San Antonio, TX, for Defendant–Appellant.

Before KING, BARKSDALE, and OWEN, Circuit Judges.

PER CURIAM: *

Stephen Brenner challenges his jury-trial conviction, and subsequent sentence, for three counts of engaging in the business of dealing in firearms without a valid license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a). Brenner contends: the evidence was insufficient for the element of the offense concerning whether he was "engaged in the business" of dealing in firearms; and a possession-of-a-stolen-firearm sentencing enhancement was not supported by the evidence. AFFIRMED.

I.

From July 1981 to February 2008, Brenner held a federal firearms license, authorizing him to deal in firearms from his residence. On 13 February 2008, however, and because of administrative deficiencies, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) denied renewal of his license. Nevertheless, Brenner continued to conduct firearms transactions (telephone conversations and in person) after February 2008. Some of those transactions—which were recorded, with the audio's being played for the jury—gave rise to this prosecution.

In early 2009, after seeing an advertisement in the telephone book for concealed-weapon training, Gonzales contacted Brenner about running the serial number on a firearm he had bought on the street, in order to determine whether it was stolen. Gonzales was also interested in trading or selling the firearm. Eventually Gonzales traded the firearm to Brenner in exchange for a TEC–DC9 pistol and ammunition. In the months that followed, Gonzales and his wife purchased at least five different firearms from Brenner. He never required them to show identification or fill out any paperwork.

That July, Gonzales was involved in a shooting with the TEC–DC9 he had acquired from Brenner. He pled guilty to, *inter alia*, aggravated assault; and, as part of that plea, he agreed to cooperate with an investigation of Brenner.

That October, Gonzales' wife called Brenner and arranged a transaction, which she said was on behalf of her husband. During the conversation, she also informed Brenner that her cousin was going to accompany her to Brenner's residence to complete the transaction. An undercover ATF Agent (the Agent) posed as her cousin. Without asking for identification or filling out any paperwork, Brenner sold a Glock pistol (count one of the indictment) to the Agent for $800 cash. This sale yielded Brenner a profit of approximately $500; he had paid approximately $300 for the firearm a few months earlier. During this transaction, Brenner expressed a willingness to sell more firearms, including some that were "coming in", as long as the Agent called ahead and paid cash.

Approximately one week later, the Agent called Brenner to inform him that he had a friend who wanted to buy firearms like the one the Agent had purchased. Brenner explained that Glock

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

pistols were hard to obtain and he "just [obtained] like one or two at a time". Instead, Brenner offered to sell other firearms which were "brand new". After exchanging telephone calls, Brenner and the Agent met; and Brenner sold the Agent, *inter alia,* two Glock pistols (count two) for approximately $1,600 cash. Brenner profited approximately $800 from this sale. During this transaction, Brenner advised the Agent that he had other guns, including a Glock pistol, "coming in" later that day.

In late October and early November 2009, Brenner and the Agent continued to negotiate sales; and Brenner eventually agreed to sell the Agent two pistols, which he described as "brand new". They met, and the Agent paid approximately $1,700 cash to Brenner in exchange for two firearms (count three). Brenner profited approximately $675 from this sale. When the Agent asked about other firearms for sale, Brenner replied that he would check to see what he had "coming in".

That December, Brenner sold four firearms to the Agent, who said the firearms were going to be resold in Mexico. The Agent paid approximately $3,500 cash for those firearms. At this time, Brenner stated to the Agent that he "used to be a gun dealer" but was "just a citizen now" and was "getting rid of everything . . . little by little".

Brenner was arrested later that day. Law-enforcement found 55 firearms during a warrant-authorized search of Brenner's residence. Among seized firearms was the firearm traded to Brenner by Gonzales in exchange for the TEC–DC9; a subsequent firearm trace revealed it had been stolen.

A subsequent investigation revealed Brenner had purchased 30 firearms after his license had not been renewed. Of those 30 firearms, ATF could account for the whereabouts of only 16.

Brenner was indicted in June 2010. In February 2011, a jury found him guilty on all three counts of engaging in the business of dealing in firearms. That May, the district court sentenced him, *inter alia,* to 24–months' imprisonment. In doing so, and because of Brenner's health problems, the court granted Brenner's motion for a downward departure from the advisory Guidelines sentencing range of 33 to 41 months. Brenner is free on bond pending appeal.

## II.

Brenner challenges his conviction and sentence, contending: the evidence was insufficient to prove he was "engaged in the business" of selling firearms, instead of attempting to liquidate his collection; and the stolen-firearm enhancement under Guideline § 2K2.1(b)(4) should not apply because he did not know the firearm was stolen. Each challenge fails.

### A.

At the two-day trial, Brenner did not testify. His wife was the only witness for the defense. Brenner moved for judgment of acquittal at the close of both the Government's case and of all evidence.

Although review of a denied motion for judgment of acquittal is *de novo,* a challenge, based on that denial, to the sufficiency of the evidence is highly deferential to the verdict. *United States v. Anderson,* 559 F.3d 348, 353 (5th Cir.2009). Such review is limited to "whether the jury's verdict was reasonable, not whether we believe it to be correct". *Id.* (internal quotation marks omitted).

Along this line, the evidence is viewed "in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a

conviction". *Id.* (internal quotation marks omitted). "[I]f the evidence would permit a rational [juror] to find every element of the offense beyond a reasonable doubt, we must affirm". *Id.* (internal quotation marks omitted).

For a conviction under 18 U.S.C. §§ 922(a)(1)(A) and 923(a), the Government must prove beyond a reasonable doubt that Brenner: "(1) engaged in the business of dealing in firearms; (2) was not a federally licensed firearms dealer; and (3) acted willfully". *United States v. Tyson,* 653 F.3d 192, 200 (3d Cir.2011). Brenner's challenge—at trial and here—relates solely to the first element.

The jury was instructed that a person "engaged in the business" of selling firearms

> devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with *the principal objective of livelihood and profit* through the repetitive purchase and resale of firearms[, *but this shall not include* a] person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, *or who sells all or part of his personal collection of firearms[.]*

(Emphasis added.) This was consistent with the relevant statute, which provides that business is conducted "with the principal objective of livelihood and profit" if "the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection". 18 U.S.C. § 921(a)(22).

Since the enactment in 1986 of 18 U.S.C. § 921(a)(21), our court has not addressed what constitutes being "engaged in the business" of dealing in firearms. The above-cited Third Circuit opinion in *Tyson*

states that defendant engages in the business of dealing in firearms when his "principal motivation is economic" and he "pursues this objective through the repetitive purchase and resale of firearms". 653 F.3d at 200–01. Needless to say, in determining the character and intent of firearms transactions, the jury must examine all circumstances surrounding the transaction, without the aid of a "bright-line rule". *United States v. Palmieri,* 21 F.3d 1265, 1269 (3d Cir.), *vacated on other grounds,* 513 U.S. 957, 115 S.Ct. 413, 130 L.Ed.2d 329 (1994). Relevant circumstances include: "the quantity and frequency of sales"; the "location of the sales"; "conditions under which the sales occurred"; "defendant's behavior before, during, and after the sales"; "the price charged"; "the characteristics of the firearms sold"; and, "the intent of the seller at the time of the sales". *Tyson,* 653 F.3d at 201.

■ Evidence regarding the circumstances surrounding the transactions at issue includes, *inter alia:* the number of transactions in which Brenner engaged in 2009 was greater than, or equivalent to, those he recorded for several of the previous years up to early 2008 when he operated as a licensed dealer; he acquired all of the indictment-charged firearms after his license had not been renewed; he made approximately 90% profit on the indictment-charged sales; they took place at his residence, the same location where he operated when he was a licensed firearms dealer; the sales were secretive, cash only, and lacking documentation; and Brenner frequently referred to firearms that were "coming in" and "brand new", thus referring to a source of firearms other than his personal collection. Therefore, a reasonable juror could have found beyond a reasonable doubt that Brenner was engaged in the business of dealing in firearms, not liquidating his firearms collection.

### B.

As discussed above, the search of Brenner's residence yielded, *inter alia,* the firearm that had been traded to him by Gonzales and was subsequently found to have been stolen. Guideline § 2K2.1(b)(4) provides for a two-level sentencing enhancement if a stolen firearm is involved in the offense. *Id.* Comment 8(B) to Guideline § 2K2.1(b)(4) provides the enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen". *Id.*

■ Brenner challenges the Guideline's strict-liability standard and maintains the evidence is insufficient to show he knew the firearm was stolen. He concedes, however, that our precedent precludes this challenge; he raises it only to preserve it for further review. *See United States v. Singleton,* 946 F.2d 23, 24–25 (5th Cir. 1991) (upholding strict-liability standard for possession-of-a-stolen-firearm enhancement).

### III.

For the foregoing reasons, the judgment is AFFIRMED.