United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 25, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 05-30263

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMEL OMAR CALDWELL,

Defendant-Appellant.

———————————

No. 05-30264

———————————

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

THOMAS JEROME BLAKEMORE,

Defendant–Appellant.

———————————————————————————

Appeals from the United States District Court
for the Western District of Louisiana

———————————————————————————

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

-1-

In this consolidated appeal, the two defendants challenge their sentences on various grounds. For the following reasons, we affirm.

## I. FACTS AND PROCEEDINGS

Jamel Caldwell and Thomas Blakemore were indicted on multiple counts related to a scheme of making false statements in connection with the acquisition of firearms from licensed dealers. Pursuant to written plea agreements, the defendants pleaded guilty to one count of conspiracy to perpetrate the indicted overt acts, in violation of 18 U.S.C. §§ 371 and 922(a)(6).

Both defendants were sentenced on February 14, 2005, after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the United States Sentencing Guidelines ("U.S.S.G.") were advisory. For purposes of calculating a guideline range, the district court enhanced both Caldwell's and Blakemore's offense levels pursuant to U.S.S.G. § 2K2.1(b)(5), for possessing or transferring a firearm "with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The district court also enhanced Caldwell's offense level based on his role as a leader or organizer of a criminal activity involving five or more participants, pursuant to U.S.S.G. § 3B1.1(a).

On appeal, Caldwell alleges the district court erred in applying the two enhancements and in determining his sentencing range using facts not proven beyond a reasonable doubt. Blakemore alleges that the district court erred in applying the § 2K2.1(b)(5) enhancement and otherwise in giving him an unreasonable sentence.

## II. STANDARD OF REVIEW

After *Booker*, this court continues to review a district court's interpretation and application of the guidelines de novo and its findings of fact for clear error. *United States v. Villegas*, 404 F.3d

-2-

355, 359 (5th Cir. 2005); *United States v. Creech*, 408 F.3d 264, 270 & n.2 (5th Cir.), *cert. denied*, 126 S. Ct. 777 (2005). Additionally, though *Booker* gave the district courts the ability to exercise discretion in sentencing, a district court's ultimate sentencing decision is reviewed for reasonableness. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005). *See Booker*, 543 U.S. at 261. In determining an appropriate sentence, a district court must consider as guideposts a properly calculated guideline range and the sentencing factors in 18 U.S.C. § 3553(a). *Mares*, 402 F.3d at 518–19; *United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006). If a district court sentences a defendant within a properly calculated guideline range, that sentence enjoys a presumption of reasonableness. *United States v. Alonzo*, 435 F.3d 551, 553–54 (5th Cir. 2006).

In regard to guideline enhancements, the district court may adopt facts contained in a PSR without inquiry, so long as the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence. *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990). To prevail on appeal, the defendant must prove that the district court's fact-finding was clearly erroneous, *see Creech*, 408 F.3d at 270 & n.2, which may include showing the material untruth of the PSR information relied upon by the district court, *see United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994). Furthermore, in determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well. *Rodriguez*, 897 F.2d at 1326. We will uphold a district court's factual finding on clear error review so long as the enhancement is plausible in light of the record as a whole. *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir.), *petition for cert. filed* (U.S. Apr. 17, 2006) (No. 05-10509).

## III.  DISCUSSION

-3-

**A.      Caldwell and Blakemore's U.S.S.G. § 2K2.1(b)(5) Enhancement**

Both Caldwell and Blakemore contend that the district court erred in applying U.S.S.G. § 2K2.1(b)(5).   The defendants argue that no evidence shows that the firearms they acquired, transported, and sold were used in another felonious activity.  This argument is not only meritless on its face, it also falsely limits § 2K2.1(b)(5).

**(1)      Caldwell**

Caldwell pleaded guilty to conspiracy to illegally acquire multiple firearms through the use of straw purchasers and false statements.  At Caldwell's guilty plea hearing, Agent Michael Graham of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified that Caldwell transported some of the firearms from Louisiana to his home state of New Jersey for resale.  According to the Pre-Sentence Report ("PSR"), at the time Caldwell transported the firearms, he was the subject of an outstanding New Jersey state warrant for felony drug possession and distribution.  Agent Graham testified that three of the guns Caldwell acquired were recovered after having been involved in crimes in New Jersey.  The PSR elaborated, at one point, that the guns were recovered from suspects "involved in narcotics trade" and, at another point, from suspects "involved in felonious narcotics activity."[1]  The PSR indicated that Caldwell had tried to obliterate the serial numbers from the guns, which of course is intended to conceal the chain of ownership, and that when he failed, he commented that he had a friend in New Jersey who would finish the job.  The PSR also stated that Caldwell sold the guns on the street above the legal market price, indicating that the guns, though purchased illegally, were not being used lawfully thereafter but rather were being used for criminal activity.

---

[1]Even after *Booker*, a PSR is presumed to be sufficiently reliable such that a district court may properly rely on it during sentencing.  *United States v. Arviso-Mata*, 442 F.3d 382, 385 n.10 (5th Cir. 2006).  *See also United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004).

Caldwell does not present any rebuttal evidence. On appeal, as at sentencing, he merely objects to the PSR's assertion that the New Jersey drug activity was felonious and contends that his conduct did not display the requisite level of conscious behavior directed by § 2K2.1(b)(5). Admittedly, the government did not present any testimony tending to show that the New Jersey drug activity was felonious, rather than simply criminal, and the PSR described the New Jersey activity as felonious in one place and as only narcotics activity in another. Nonetheless, the PSR states that the guns subsequently were used in felony narcotics activity, and the district court may properly rely on the PSR. Also, the district court was free to disregard Caldwell's unsworn assertions that the PSR was inaccurate. *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995).

More importantly, though, Caldwell's argument misconstrues the import of the nature of the New Jersey drug activity; whether it was felonious would not be dispositive even if it were known. Rather, the determinative question is whether Caldwell had reason to believe that his firearms would be used or possessed in connection with[2] a felony offense, which at its most inclusive point "means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 cmt. n.7. Regardless of whether Caldwell knew that the disrupted New Jersey drug activity involving his firearms was, in fact, a felony or a misdemeanor, he certainly knew that his firearms would be used in substantial criminal activity. Evidence of his knowledge includes his leadership role in a conspiracy to acquire fifty-two firearms; his transportation of at least some of the weapons out-of-state; his attempt to obliterate the serial numbers; his sale of the firearms on the street above the market price;

---

[2]"In connection with" implies that the § 2K2.1(b)(5) enhancement only is applicable when the firearm "may have facilitated or made more dangerous the other felony offense." *Villegas*, 404 F.3d at 364.

and the later use of those weapons in connection with narcotics activity.

The plain language of the guideline dictates that the government need not prove that the firearm was actually used in a specific other felony offense; it is enough that a defendant had reason to believe that it would be. While our circuit has not had occasion to examine this particular language of § 2K2.1(b)(5) in the past, several cases from other circuits support our holding. *See, e.g.*, *United States v. Molloy*, 324 F.3d 35, 39 (1st Cir. 2003) (noting that circuit's precedent permits a § 2K2.1(b)(5) enhancement "even where the defendant had no knowledge of a specific felony involving the transferred weapons"); *United States v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003) (affirming a § 2K2.1(b)(5) enhancement where the defendant knew the purchaser was a drug dealer and the guns were numerous, inexpensive, and easily concealable); *United States v. Jemison*, 237 F.3d 911, 918 (7th Cir. 2001) (affirming a § 2K2.1(b)(5) enhancement on the basis that the defendant sold multiple guns to a known criminal gang); *United States v. Fredrickson*, 195 F.3d 438, 440 (8th Cir. 1999) (collecting cases).

While no direct evidence conclusively establishes Caldwell's understanding of the future use of the firearms, the sentencing court is permitted to make common-sense inferences from the circumstantial evidence. *See Rodriguez*, 897 F.2d at 1326. The district court's application of the enhancement is plausible in light of the record as a whole. As such, the district court did not clearly err in finding that Caldwell, at the very least, had reason to believe that the firearms would be used in another felony offense.

**(2) Blakemore**

Blakemore's challenge fails for the same reasons as does Caldwell's. While no evidence suggests that Blakemore ever attempted to obliterate the serial numbers for the guns, the other

evidence is sufficient to support the enhancement. Blakemore conspired with several others, including Caldwell, to acquire twenty-four firearms. During the conspiracy, he entered gun stores with straw purchasers, pointed out the weapon he wanted, and provided the cash necessary for purchase. Acting as Caldwell's driver, he transported at least some of those guns from Louisiana to New Jersey, where Caldwell then sold them on the street. Several of the guns later were recovered from individuals involved in what the district court specifically found was felonious narcotics activity.[3]

Blakemore argues that his relative youth and lack of sophistication prevented him from realizing the consequences of his actions. Blakemore's assertions of naivete are not compelling. At the time of the criminal conduct, he was twenty years old, had graduated from high school, successfully had held employment for years, and hoped to matriculate to a Louisiana college after meeting in-state residency requirements. These attributes do not give us pause in finding that the district court's application of the enhancement was plausible in light of the record as a whole. Accordingly, we hold that the district court did not clearly err in determining that Blakemore had reason to believe that the firearms would be used in another felony offense.

### B. Caldwell's U.S.S.G. § 3B1.1(a) Enhancement

The district court enhanced Caldwell's offense level pursuant to U.S.S.G. § 3B1.1(a), finding that Caldwell was the leader or organizer of a criminal activity that involved five or more participants. The district court's factual finding is supported by the PSR, which stated that Caldwell used five "straw purchasers" to acquire fifty-two firearms through the use of false statements. In a conclusory manner, Caldwell asserts that, while the discovery material furnished to his attorney listed the names

---

[3]At Blakemore's sentencing, the district court stated that the New Jersey drug activity was felonious. At Caldwell's sentence, the district court did not make the same statement. Rather, the felonious nature of the New Jersey drug activity was reported in the PSR.

of five individuals who participated in the firearms purchases, "[t]he connections of two of those persons with the defendant and to the conspiracy was not satisfactorily established in counsel's opinion." Without more, such as citation to and quotation of the allegedly unsubstantiated parts of the discovery material, Caldwell cannot show that the enhancement is not plausible in light of the entire record. As such, Caldwell has failed to prove that the district court clearly erred in applying the § 3B1.1(a) enhancement.

## C. Blakemore's Reasonableness Challenge

Blakemore argues that his sentence is unreasonable because the district court failed to give proper weight to his youthfulness and lack of prior criminal history. The district court properly calculated a guideline range of twenty-four to thirty months. After extensively discussing the factors it considered in arriving at a sentence, including Blakemore's age and lack of prior criminal experience, the district court sentenced Blakemore to twenty-four months imprisonment. This court presumes that Blakemore's sentence, which is within the properly calculated guideline range, is reasonable. *Alonzo*, 435 F.3d at 553–54. Blakemore has failed to overcome this presumption.

Blakemore pleaded guilty to conspiracy to illegally acquire firearms. His overt acts included the acquisition of twenty-four handguns, which were then transported from Louisiana to New Jersey and sold outside the legal firearms market. The transcript shows that the district court gave considerable attention to Blakemore's specific characteristics, even going so far as to compliment Blakemore on his work history, his cooperativeness, and not previously having been in trouble with the law. In its discretion, the district court properly counterbalanced Blakemore's mitigating characteristics with the seriousness of the charged offense, as required by 18 U.S.C. § 3553(a). As such, the district court did not unreasonably sentence Blakemore to twenty-four months

imprisonment, the low-end of the properly calculated guideline range.

**D.    Caldwell's *Booker* Challenge**

Caldwell argues that, in order to support an enhancement after *Booker*, a district court must determine facts relevant to sentencing beyond a reasonable doubt.  This argument is foreclosed.  *See Mares*, 402 F.3d at 519.

## IV.  CONCLUSION

Finding no error, we AFFIRM the sentences of Caldwell and Blakemore.