**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 6, 2010

Charles R. Fulbruge III
Clerk

No. 09-40182

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KERIANNE GREEN,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC 7:08-CR-1411

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this appeal, we review Defendant-Appellant Kerianne Green's ("Green") sentence resulting from a guilty-plea conviction for knowingly and willfully making and causing to be made a false statement in the records of a federally licensed firearms dealer, pursuant to 18 U.S.C. §§ 924(a)(1)(A) & 2. Concluding that the district court erred in sentencing Green, we vacate and remand for resentencing.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Green purchased five Beretta pistols in McAllen, Texas which she then smuggled into Mexico for her common-law spouse, Gabriel Gardea ("Gardea"), and a man identified in the presentence report as FNU LNU. For her straw purchases, Green was paid $1,500 in cash.

After being apprehended by Bureau of Alcohol, Tobacco and Firearm agents, Green admitted her part in the scheme. The probation officer assigned Green a base offense level of 12. She received two additional levels because she purchased five firearms for Gardea and FNU LNU. Although Green purchased firearms to transfer to Gardea and FNU LNU, the probation officer concluded that Green's sentence should not be increased by four levels for trafficking firearms under U.S.S.G. § 2K2.1(b)(5) because there was insufficient evidence that Gardea and FNU LNU were "individuals whose possession or receipt of the firearm[s] would be unlawful." *See* U.S.S.G. § 2K2.1, com. n.13(A). With no further enhancements or reductions, Green's total offense level was 14, which, when combined with her criminal history category of I, yielded a guidelines range of 15 to 21 months in prison.

The Government objected to the probation officer's failure to recommend that the district court impose the four-level enhancement under § 2K2.1(b)(5). The Government argued that the probation officer failed to recognize that Application Note 13 also provides that the enhancement should be imposed where the firearms are transported or transferred to "individuals who intend to use or dispose of the firearm unlawfully." *See* U.S.S.G. § 2K2.1, com. n.13(A). Green responded that the enhancement was not applicable because there was no evidence showing that she knew that Gardea and FNU LNU's intended use or disposition of the firearms would be unlawful.

At the sentencing hearing, the district court granted Green two levels off of her total offense level for acceptance of responsibility. In relation to the

Government's argument that Green's sentence should be enhanced, the district court found that Green was "not buying a gun and giving it to somebody who she knows is going to use it to bird hunt or deer hunt, [sic] or target practice." Instead, the court found that Green was buying a gun and taking it "into Mexico where you can't get these guns. Where there's common knowledge that guns are predominately used by drug trafficking organizations." Accordingly, the district court concluded that the four-level enhancement was warranted. The court found, however, that Green was a minor participant in the scheme. Because the district court's finding that the § 2K2.1(b)(5) enhancement applied put Green's offense level above 16, the Government moved for an additional point reduction for acceptance of responsibility, which the court granted. Green's total offense level was 13, which resulted in an advisory guideline range of 12 to 18 months in prison.[1] The court sentenced Green to 12 months and one day in prison.

## II. DISCUSSION

Green avers that the district court clearly erred in imposing the four-level enhancement under § 2K2.1(b)(5). The district court's application of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "In regard to guideline enhancements, the district court may adopt facts contained in the PSR without inquiry, so long as the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United*

---

[1] To encapsulate the final guideline offense level calculations:

| | |
|---|---|
| Base offense level | **12** |
| Enhancement for number of firearms | **+2** |
| Enhancement for trafficking | **+4** |
| Minor role reduction | **-2** |
| Reduction for acceptance of responsibility | **-3** |
| | |
| TOTAL OFFENSE LEVEL | **13** |

*States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). In determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are factual findings reviewed for clear error as well. *United States v. Rodriguez*, 897 F.2d 1324, 1326 (5th Cir. 1990). This court upholds a district court's factual finding on clear error review so long as the enhancement is plausible in light of the record as a whole. *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006). The Government must prove sentencing enhancements by a preponderance of the evidence. *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007).

Where a defendant is convicted of a firearms possession offense, the guidelines provide for a four-level enhancement "[i]f the defendant engaged in the trafficking of firearms[.]" U.S.S.G. § 2K2.1(b)(5). The application notes instruct that this enhancement applies where the defendant:

> (I) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual–
>
>> (I) whose possession or receipt of the firearm would be unlawful;
>>
>> or
>>
>> (II) who intended to use or dispose of the firearm unlawfully.

*Id.*, com. n.13(A).

The first point, that Green transferred two or more firearms to another person, is not in dispute. At sentencing, the Government did not argue, and the district court did not find that Gardea or FNU LNU were persons prohibited from the possession or receipt of firearms. But the district court did find that Green "knew . . . that she was transferring more than one weapon to somebody whose intended use of the weapon was for unlawful purposes." Green avers that

the Government failed to establish by a preponderance of the evidence that she knew or had reason to believe that Gardea or FNU LNU intended to use or dispose of the firearms unlawfully. She argues that the district court's findings that: (1) "you can't get these guns" in Mexico; (2) it was "common knowledge that guns are predominately used by drug trafficking organizations;" and (3) she was "not buying a gun and giving it to somebody who she knows is going to use it to bird hunt or deer hunt, [sic] or target practice" were not based on anything in the record. Therefore, Green argues that the Government's preponderance of the evidence burden was not satisfied.

While there is no case law in our circuit directly on point, several cases from our sister circuits have examined this particular issue. In *United States v. Grinnage*, 309 F. App'x 334 (11th Cir. 2009)(unpublished), the Eleventh Circuit found that the Government, through its use of indirect evidence, established by a preponderance of the evidence that Grinnage had reason to believe that he was transferring firearms to individuals who intended to dispose of them unlawfully. The court based its conclusion on a conversation between Grinnage and an undercover investigator to whom Grinnage transferred the firearms. During that conversation, the undercover investigator told Grinnage that "the money from selling the guns was spent on a tattoo parlor 'to make it look legit.'" *Grinnage*, 309 F. App'x at 336. The court reasoned that this conversation represented indirect evidence of Grinnage's knowledge that he was transferring the firearms to an individual who intended to dispose of them unlawfully because "there would have been no reason for the investigator to make the money 'look legit' unless something illegal was occurring." *Id.*

Similarly in *United States v. Marceau*, 554 F.3d 24 (1st Cir. 2009), the First Circuit relied upon indirect evidence to hold that the defendant had reason to believe that he was transferring firearms to individuals who intended to dispose of them unlawfully. The court based its holding upon the defendant's

pre-arrest statements evincing an intent to traffic the firearms coupled with his actions which precisely tracked his stated intent. *Id.* at 32. After stealing the firearms, the defendant removed their serial numbers and stated that he wanted to sell them to obtain money to buy drugs. *Id.* The court concluded that these events – including most prominently the obliteration of serial numbers, which is done in anticipation that the guns will be used in criminal activity, were more than sufficient to meet the preponderance of the evidence standard required for a four level enhancement. *Id.*

Here, in contrast, to *Grinnage* and *Marceau* there is no evidence in the record to satisfy the preponderance of the evidence standard. The record is silent about what Green knew, or had reason to believe, with regard to Gardea and FNU LNU's plans for the guns. Even if it is assumed that Green knew that Gardea and FNU LNU were not personally going to use the guns for hunting or target practice in Mexico, she might still have thought that the guns were destined for Mexican customers who did intend to engage in these, or other, innocent pursuits. Moreover, the Government presented no evidence showing that Berettas could not be obtained in Mexico or that Green knew this to be true. Likewise, there was no evidence presented by the Government that it is common knowledge that guns are predominantly used by drug trafficking organizations and no evidence that Green was aware of this allegedly commonly known fact.

In sum, based upon the record before us the Government failed to meet the preponderance of evidence standard to warrant an enhancement of Green's sentence. Although Green admitted that she bought the firearms in question and knew her actions were illegal, the record is devoid of any evidence showing that she knew or had reason to believe that Gardea and FNU LNU intended to use or dispose of the firearms unlawfully.

## III.  CONCLUSION

For the foregoing reasons, Green's sentence is vacated and we remand for resentencing.  At a new sentencing hearing, the Government may offer evidence not presented previously to justify the sentence, and Green may offer rebuttal. *United States v. Kinder*, 980 F.2d 961, 963 (5th Cir. 1992). We have held that when a defendant succeeds in having a sentence vacated, on remand "all new matter relevant to the issue appealed, reversed, and remanded, may be taken into consideration by the resentencing court." *United States v. Marmolejo*, 139 F.3d 528, 530 (5th Cir. 1998).  A district court should gather "the relevant facts and evidence on the specific and particular issues heard by the appeals court and remanded for resentencing." *Id.*