# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2010

No. 09-40861

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MIREYA RIVERA JUAREZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Mireya Rivera Juarez pleaded guilty, pursuant to a written plea agreement, to one count of making a false statement to a federally licensed firearms dealer in violation of 18 U.S.C. §§ 924(a)(1)(A) and (a)(2). Juarez now appeals her sentence, arguing that the district court erred when it applied two four-level enhancements under U.S. Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(5) and § 2K2.1(b)(6). For the reasons discussed below, we affirm.

## I

The underlying facts of this case are undisputed. Over an approximately thirteen-month period, Juarez, a forty-four year old naturalized United States

No. 09-40861

citizen with no prior criminal history, purchased twenty-five firearms for a man known to her only as "El Mano." The majority of these firearms were military-style assault weapons, including AK-47 and AR-15 assault rifles, and authorities ultimately discovered two of the purchased firearms—a Colt .38 caliber pistol and a Bushmaster .223 caliber rifle—in the possession of gang members in Mexico.

Juarez began making these purchases after meeting "El Mano" at the Family Center in Roma, Texas. Juarez approached him to request money for taxi fare, and "El Mano" asked Juarez if she would be willing to purchase firearms in exchange for money. Juarez agreed.

Juarez's purchases for "El Mano" occurred in the following manner. "El Mano" would contact Juarez by cell phone and instruct her to meet him at the Family Center. He would then give her money and lend her his vehicle, which she would use to drive to a gun store. Juarez would purchase the firearms that "El Mano" had specified, naming herself on ATF Form 4473 as the actual buyer of the firearms and providing a false address. Juarez would then drive back to the Family Center, transfer the firearms to "El Mano," and receive $200 for each firearm that she purchased. This arrangement ended when "El Mano" informed Juarez that there would be no further purchases because law enforcement was "too hot."

ATF agents began investigating Juarez after receiving a tip that she had purchased several highly trafficked firearms. Juarez was ultimately charged by indictment with three counts of making false statements to federally licensed firearms dealers, in violation of 18 U.S.C. §§ 924(a)(1)(A) and (a)(2). She pleaded guilty to one count pursuant to a written plea agreement, and the district court ordered the preparation of a presentence investigation report (PSR).

The PSR assigned Juarez a base offense level of twelve. Juarez then received a six-level increase because the offense involved twenty-five to ninety-

No. 09-40861

nine firearms and a two-level reduction for acceptance of responsibility, which left Juarez with a total offense level of sixteen. After combining Juarez's offense level with her category I criminal history, her guidelines range of imprisonment was twenty-one to twenty-seven months.

The Government filed written objections to the PSR. Specifically, the Government argued for two separate four-level increases in Juarez's base offense level, pursuant to U.S.S.G. § 2K2.1(b)(5) and § 2K2.1(b)(6). The § 2K2.1(b)(5) enhancement applies to a defendant convicted of a firearms offense who "engaged in the trafficking of firearms."[1] The application notes to the guidelines provide that the enhancement applies when the defendant

(i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

(I) whose possession or receipt of the firearm would be unlawful; or

(II) who intended to use or dispose of the firearm unlawfully.[2]

The § 2K2.1(b)(6) enhancement applies "[i]f the defendant used or possessed any firearm . . . in connection with another felony offense; or possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."[3]

---

[1] U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2K2.1(b)(5) (2008).

[2] U.S.S.G. § 2K2.1 cmt. n.13.

[3] U.S.S.G. § 2K2.1(b)(6).

No. 09-40861

The Government argued that the § 2K2.1(b)(5) enhancement should apply to Juarez because

> [t]he types of the weapons Juarez purchased, coupled with Juarez's statement that "El Mano" said she could not purchase any more firearms because law enforcement was "too hot," and her proximity to the U.S.–Mexican border and its associated violence leads to the obvious conclusion that she should have had reason to believe that the weapons would be transported, transferred, or disposed of to individuals in Mexico, a disposition which would have been unlawful.

Additionally, the Government noted that authorities discovered two of the firearms that Juarez purchased in the possession of gangs in Mexico. The Government also argued that the same facts supported the application of the § 2K2.1(b)(6) enhancement. The probation office ultimately filed an addendum to the PSR in which it stated that it did not enhance Juarez's offense level under either § 2K2.1(b)(5) or § 2K2.1(b)(6) because there was insufficient evidence to conclude that the enhancements applied, and the office deferred further consideration of the issue to the district court.

The district court initiated Juarez's sentencing hearing by obtaining Juarez's affirmance that she had reviewed the PSR with her attorney and that everything in the PSR was factually correct. The district court also granted Juarez an additional one-level reduction in her offense level based on her acceptance of responsibility. The district court then turned to the Government's argument regarding the § 2K2.1(b)(5) and § 2K2.1(b)(6) enhancements and concluded that both applied, explaining:

> It just seems to me that you would have to be deliberately blind to the circumstances if we—our proximity to the border, the substantial drug traffic that is common knowledge to any member of the community, the violence associated with that, just south of our border, the types of weapons that are being involved here—assault, military style, automatic weapons, the nature in which she's being asked to purchase these, as a straw person,

No. 09-40861

somebody who goes only by a nickname, and the fact that she leaves them in a truck, gets paid, walks away from the truck, that the circumstances of that are obvious, I think, to anyone who opens their eyes to the situation to know that these drugs [sic] are being taken into Mexico to be used for unlawful purposes, and of course, the mere transporting them into Mexico is unlawful . . . .

* * *

So I can prove based on those obvious circumstances that the trafficking enhancement is appropriately assessed, as well as the enhancement for transferring these with reason to believe that they would be possessed in connection with another felony offense, so both of those enhancements are justifiably assessed.

In reaching its decision, the district court did not consider the statement by "El Mano" to Juarez—that Juarez could no longer purchase firearms for him because law enforcement was "too hot"—as the statement occurred after Juarez's final purchase and thus could not support the enhancements because it did not evidence Juarez's knowledge at the time she purchased the firearms. The district court also granted Juarez, at her request, a two-level reduction because it found that she was a minor participant.

With the one-level reduction for acceptance of responsibility, the two-level minor participant reduction, the four-level enhancement under § 2K2.1(b)(5), and the four-level enhancement under § 2K2.1(b)(6), Juarez's revised offense level was twenty-one. This resulted in a guidelines range of thirty-seven to forty-six months, and the district court sentenced her to thirty-seven months of imprisonment. On the Government's motion, the district court dismissed the remaining counts of the indictment. This appeal followed.

## II

We first consider the district court's decision to apply the § 2K2.1(b)(5) trafficking enhancement to Juarez. "We review the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual

findings for clear error."[4]  A district court may draw reasonable inferences from the facts when determining whether an enhancement applies, and we review those inferences for clear error.[5]  The government must prove sentencing enhancements by a preponderance of the evidence.[6]

As relevant here, the § 2K2.1(b)(5) enhancement applies where the defendant (1) "transported, transferred, or otherwise disposed of two or more firearms to another individual" and (2) "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully."[7]  Juarez concedes that she transferred two or more firearms to "El Mano," but she contends that the record is devoid of evidence that she knew or had reason to believe that "El Mano" intended to use or dispose of those firearms unlawfully. Thus, she argues, the Government failed to establish the second requirement for the § 2K2.1(b)(5) enhancement.

## A

Before addressing the specifics of Juarez's argument, we note a preliminary issue—the parties appear to dispute whether we should review the district court's decision to apply the § 2K2.1(b)(5) enhancement under the de novo or clear error standard of review.  Juarez argues that the facts before the district court were uncontested—neither the Government nor Juarez disputed the PSR's recital of the facts—and the relevant issue on appeal is the district court's application of § 2K2.1(b)(5) to those facts.  Juarez contends that the

---

[4] *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007) (citing *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999)).

[5] *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010) (citing *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)).

[6] *Trujillo*, 502 F.3d at 357.

[7] U.S.S.G. § 2K2.1 cmt. n.13.

No. 09-40861

district court's decision was simply a legal conclusion drawn from subsidiary facts, and she notes that, in this circuit, an "application of the facts to the guidelines is a question of law subject to de novo review."[8]

Juarez's argument is without merit.  She challenges the district court's determination that, when she purchased firearms for "El Mano," she possessed the requisite "knowledge" or "reason to believe" that "El Mano" intended to use or dispose of those firearms unlawfully.  We have reviewed such determinations for clear error in prior cases,[9] and nothing in the facts of this case warrants a departure from that approach.

## B

Reviewing the district court's decision for clear error, we conclude that the district court did not clearly err when it applied the § 2K2.1(b)(5) enhancement. There is considerable evidence from which the district court could infer that Juarez knew or had reason to believe that her conduct would result in the transport, transfer, or disposal of a firearm to an individual who intended to use or dispose of the firearm unlawfully.  "El Mano" was unwilling to purchase the weapons himself, and he sent Juarez alone to make the purchases, indicating that he did not wish to be associated with the transactions.  The clandestine nature of Juarez's dealings with "El Mano" and the fact that she was paid $200 above the retail cost of each of twenty-five weapons for her role also would give Juarez reason to believe that the firearms were being purchased for an unlawful

---

[8] *United States v. Shell*, 972 F.2d 548, 550 (5th Cir. 1992).

[9] *See United States v. Green*, 360 F. App'x 521, 523-24 (5th Cir. 2010) (reviewing for clear error a district court's finding that a defendant knew or had reason to believe that she was transferring firearms to someone who intended to use or dispose of the firearms unlawfully under § 2K2.1(b)(5)); *United States v. Caldwell*, 448 F.3d 287, 291-92, 293 (5th Cir. 2006) (reviewing for clear error a district court's finding that defendants had reason to believe that firearms would be used or possessed in connection with a felony offense under former § 2K2.1(b)(5)).

No. 09-40861

purpose.[10]  It is highly unlikely that a person who intended to use these weapons lawfully would pay a $200 premium for each of them.

Although Juarez points to our recent decision in *United States v. Green* to support her claim of error, we believe that case is distinguishable.  In *Green*, we vacated a district court's decision to apply the § 2K2.1(b)(5) enhancement to a defendant who, in exchange for $1,500, purchased five Beretta pistols in Texas and then smuggled the weapons into Mexico for her husband and another man.[11]  Here, Juarez purchased over two dozen weapons, most of them military-style assault rifles, and delivered them to a man she knew only by a nickname.  The number of weapons, their type, and the circumstances surrounding Juarez's relationship with "El Mano" all serve to separate this case from *Green*.  Under such circumstances, we cannot conclude that it was clear error for the district court to infer that Juarez knew or had reason to believe that she was transferring firearms to an individual who intended to use or dispose of them in an unlawful manner.[12]  Accordingly, we affirm the district court's application of the § 2K2.1(b)(5) enhancement to Juarez.

### III

We next consider Juarez's challenge to the district court's decision to apply the § 2K2.1(b)(6) enhancement.  Section 2K2.1(b)(6) provides for a four-level enhancement when the defendant "possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in

---

[10] *See Caldwell*, 448 F.3d at 292 (recognizing that evidence of knowledge that firearms would be used or possessed in connection with drug activity included their sale on the street above the market price).

[11] 360 F. App'x at 522-25.

[12] *Cf. United States v. Mena*, 342 F. App'x 656, 658 (2d Cir. 2009) (affirming district court's imposition of the § 2K2.1(b)(5) trafficking enhancement when the defendant, as instructed by his brother-in-law, twice delivered guns in a plastic bag in exchange for cash on a street in Manhattan).

8

connection with another felony offense."[13]   A firearm is "used or possessed in connection with another felony offense" when the firearm "facilitated, or had the potential of facilitating" the felony offense.[14]   Thus, in order to demonstrate that the § 2K2.1(b)(6) enhancement applied to Juarez, the Government needed to establish by a preponderance of the evidence (1) another felony offense, (2) that one of the firearms that Juarez purchased facilitated, or had the potential of facilitating, that felony offense, and (3) that Juarez possessed or transferred the firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with that offense.[15]

The Government argued below that the same circumstances that supported the application of the § 2K2.1(b)(5) enhancement supported an enhancement under § 2K2.1(b)(6).  The district court agreed.  The district court did not expressly identify a felony upon which it relied when applying the § 2K2.1(b)(6) enhancement to Juarez, but the district court observed that "these drugs [sic] are being taken into Mexico to be used for unlawful purposes, and of course, the mere transporting them into Mexico is unlawful."  The Government, on appeal, points to illegal firearms smuggling in violation of 22 U.S.C. §§ 2778(b) and (c) and 22 C.F.R. § 121.1 as the felony offense supporting the enhancement, and Juarez refers to this offense as well.  Accordingly, we consider Juarez's appeal of the § 2K2.1(b)(6) enhancement with that offense in mind.[16]

---

[13] U.S.S.G. § 2K2.1(b)(6) (2008).

[14] U.S.S.G. § 2K2.1 cmt. n.14(A).

[15] *See United States v. Anderson*, 559 F.3d 348, 357 (5th Cir.), *cert. denied*, — U.S. —, 129 S. Ct. 2814 (2009).

[16] *See United States v. Condren*, 18 F.3d 1190, 1194 (5th Cir. 1994) (noting that the initial step in evaluating a § 2K2.1(b)(6) enhancement is to "first identify the other felony employed in the district court's enhancement calculus").

No. 09-40861

Juarez makes two arguments on appeal.  First, she claims that the illegal smuggling of firearms into Mexico cannot constitute "another felony offense" under § 2K2.1(b)(6).  Second, she claims that, as with the § 2K2.1(b)(5) enhancement, the Government failed to establish that she possessed or transferred a firearm with "knowledge, intent, or reason to believe" that it would be used or possessed in connection with a felony offense.

## A

We first consider Juarez's argument that the illegal transportation or smuggling of firearms into Mexico cannot constitute "another felony offense" under § 2K2.1(b)(6).  Juarez claims that the commentary to the guidelines excludes firearms trafficking and possession offenses from the definition of "another felony offense" for purposes of the § 2K2.1(b)(6) enhancement and that the transportation or smuggling of firearms into Mexico is such an excluded firearms trafficking offense.

Juarez did not present this argument to the district court.  Juarez's only objection to the application of § 2K2.1(b)(6) at sentencing was her claim that the Government presented insufficient evidence to establish that she knew or had reason to believe that any of the firearms would be used or possessed in connection with a felony offense.  That objection did not preserve the issue Juarez now raises—that the district court relied on a felony offense that cannot constitute "another felony offense" under the guidelines.  We review this particular challenge for plain error only.[17]  We find plain error when (1) there was an error or defect; (2) the legal error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the defendant's

---

[17] *United States v. Perez*, 585 F.3d 880, 886 (5th Cir. 2009) (reviewing an objection that defendant "failed to preserve" at sentencing "for plain error only").

No. 09-40861

substantial rights.[18]   If Juarez satisfies those three elements, the decision to correct the error then lies within our discretion.[19]  We will exercise our discretion to correct the error only if "the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"[20]

The district court did not plainly err.  Although we acknowledge that several of our sister circuits have taken the position Juarez now advances—that a firearms possession or trafficking offense cannot constitute "another felony offense" for purposes of the § 2K2.1(b)(6) enhancement—each of the cases Juarez cites reached that decision after applying a version of the commentary to the guidelines that has since been amended.[21]  Our sister circuits, in categorically excluding firearms possession and trafficking offenses from the definition of "another felony offense," relied on an application note that provided, in relevant part: "[a]s used in [former] subsection (b)(5) [now subsection (b)(6)] . . . 'another felony offense' . . . refer[s] to offenses other than explosives or firearms

---

[18] *United States v. John*, 597 F.3d 263, 284 n.91 (5th Cir. 2010) (citing *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)).

[19] *Id.*

[20] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[21] *See United States v. Valenzuela*, 495 F.3d 1127, 1133-34 (9th Cir. 2007) (holding that "a defendant's sentence may not be enhanced under [former] § 2K2.1(b)(5) [now § 2K2.1(b)(6)] if the other felony offense is a firearms trafficking or possession offense"); *United States v. Harper*, 466 F.3d 634, 650 (8th Cir. 2006) ("'Another felony offense' for purposes of [former] § 2K2.1(b)(5) does not include firearms possession or trafficking offenses."); *United States v. Lloyd*, 361 F.3d 197, 201 (3d Cir. 2004) ("[R]egardless of the interpretation given to the word 'another' in [former] § 2K2.1(b)(5), 'firearms possession or trafficking offenses' are categorically removed from the set of crimes that may constitute 'another felony offense.'"); *United States v. Boumelhem*, 339 F.3d 414, 427-28 (6th Cir. 2003) (holding that a district court erroneously applied the former § 2K2.1(b)(5) enhancement because the predicate felony—conspiracy to ship or transport firearms and ammunition in foreign commerce—was a "firearms trafficking offense" that could not serve as "another felony offense" under the guideline); *United States v. Garnett*, 243 F.3d 824, 827 (4th Cir. 2001) (noting that a firearms trafficking offense "cannot serve as the basis for the [former] section 2K2.1(b)(5) enhancement").

11

possession or trafficking offenses."[22]   A 2006 amendment to the guidelines removed that note from the commentary,[23] however, and the commentary to the 2008 version of the guidelines—the version applicable in this case—defines "another felony offense" as "any federal, state, or local offense, other than *the* explosive or firearms possession or trafficking offense."[24]

The addition of the word "the" in the amendment indicates the Sentencing Commission's intention to no longer exclude all explosive or firearms possession or trafficking offenses from the definition of "another felony offense" under § 2K2.1(b)(6).  The commentary now excludes from the definition of "another felony offense" only the possession or trafficking offense that serves as the basis for the defendant's conviction.  Here, Juarez's crime of conviction, making a false statement to a federally licensed firearms dealer, is distinct from the crime used to support the application of the enhancement, the illegal transportation of firearms into Mexico.  Accordingly, we reject Juarez's argument that the district court erred by treating the illegal transportation or smuggling of firearms into Mexico as "another felony offense" under § 2K2.1(b)(6).

**B**

Juarez contends that the Government failed to establish that she possessed or transferred a firearm with "knowledge, intent, or reason to believe" that it would be used or possessed in connection with a felony offense.  She asserts that the record does not support the district court's conclusion that she knew or had reason to believe that any of the firearms she transferred to "El Mano" would be smuggled into Mexico.  As we already noted with respect to the

---

[22] U.S.S.G. § 2K2.1 cmt. n.15 (2005).

[23] U.S.S.G. app. C amend. 691 (Supp. 2008).

[24] U.S.S.G. § 2K2.1 cmt. n.14(C) (2008) (emphasis added).

No. 09-40861

§ 2K2.1(b)(5) enhancement, whether Juarez had the requisite "knowledge" or "reason to believe" is reviewed for clear error.[25]

We conclude that the district court did not clearly err when it imposed the enhancement under § 2K2.1(b)(6).  Juarez purchased over two dozen weapons, the majority of which were military-style assault rifles, for a man that she knew only as "El Mano."  Many of these purchases were repetitive—in one one-month period, for example, Juarez purchased the same model of firearm six different times.  In every transaction with "El Mano," she delivered the weapons in Roma, Texas, a town located just one mile from the border between Mexico and the United States, in some instances after transporting them from a gun store in McAllen, Texas, thirty-seven miles from Roma.  The district court cited the violence across the border between Texas and Mexico as reason for Juarez to believe that the assault-type weapons she illegally purchased were intended to be transported the very short distance separating Roma from Mexico.  These facts, considered as a whole, support the district court's conclusion that Juarez transferred a firearm with knowledge or reason to believe that it would be smuggled into Mexico.

Although Juarez compares her case to the Eleventh Circuit's decision in *United States v. Askew*, in which that court concluded that a district court erroneously applied the § 2K2.1(b)(6) enhancement to a defendant who assisted in the theft of fifty-four firearms from a gun store with the knowledge that the guns were being stolen to be sold,[26] Juarez's circumstances are somewhat different from those present in *Askew*.  The court in *Askew* relied heavily on the fact that the defendant was a "non-seller" in that he knew the firearms that he

---

[25] *See United States v. Caldwell*, 448 F.3d 287, 291-93 (5th Cir. 2006) (reviewing for clear error a district court's finding that defendants had reason to believe that firearms would be used or possessed in connection with a felony offense).

[26] 193 F.3d 1181, 1185 (11th Cir. 1999).

13

No. 09-40861

helped to steal would be sold but did not know to whom they would be sold or under what circumstances.[27]    By contrast, the district court here could reasonably infer from all of the circumstances surrounding Juarez's purchases that Juarez transferred at least one of those twenty-five weapons with a "reason to believe" that it would be illegally smuggled into Mexico.

To be sure, the record contains no direct evidence establishing Juarez's knowledge with respect to the future use of the firearms she purchased. But, as we previously have explained, "the sentencing court is permitted to make common-sense inferences from the circumstantial evidence."[28]  Under the clear error standard of review, the district court's decision to apply the enhancement need only be "plausible in light of the record as a whole."[29]    Based on the particular facts before us, the district court's finding that Juarez transferred a firearm with knowledge or reason to believe that it would be illegally smuggled into Mexico is plausible, and we cannot say that there is clear error.  The district court did not clearly err in applying the § 2K2.1(b)(6) enhancement.

\*      \*      \*

For the aforementioned reasons, the sentence is AFFIRMED.

---

[27] *Id.* at 1184-85.

[28] *Caldwell*, 448 F.3d at 292.

[29] *Id.*