# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2925

_____

United States of America

*Plaintiff - Appellee*

v.

Skip Earnest Ralph Lomax

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: September 25, 2018
Filed: December 12, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Skip Earnest Ralph Lomax pleaded guilty to distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession of an unregistered destructive device in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, and being a felon in possession

of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court[1] imposed concurrent sentences of 151 months' imprisonment on the controlled substance offense and 120 months' imprisonment on each of the weapons charges. Lomax argues that the court erroneously applied a four-level enhancement for trafficking in firearms under United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2K2.1(b)(5).  We affirm.

A confidential source alerted law enforcement in Texarkana, Arkansas, that Lomax was attempting to sell an automatic weapon, ammunition, and a live hand grenade.  The source provided investigators with a photograph sent by Lomax depicting the items in a blue tool case, whereupon law enforcement officers initiated a controlled purchase.  The source contacted Lomax and agreed to meet him in a field near a chemical plant in Texarkana.

Lomax arrived at the plant at approximately 3:30 p.m.  The source, a felon, retrieved a box from the back of Lomax's truck and signaled to law enforcement that the transaction had taken place.  Agents confirmed that the source had received a blue tool case containing a hand grenade and an automatic weapon with four magazines and two boxes of ammunition.  A waiting arrest team was able to take Lomax into custody after a two-mile, crash-ending pursuit.  Neither the firearm nor the grenade was registered.  See 26 U.S.C. § 5861(d).

At sentencing the district court overruled Lomax's objection to the application of Guidelines § 2K2.1(b)(5), which applies if a defendant

    (I)    transported, transferred, or otherwise disposed of two or more firearms to another individual . . . ; and

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

(ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
(I) whose possession or receipt of the firearm would be unlawful; or
(II) who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1 cmt. n.13(A). The district court determined that Lomax had transferred two weapons to someone he knew or had reason to believe was a felon and who he had reason to believe intended to use the weapons unlawfully.

Lomax argues on appeal that the facts set forth in the presentence report (PSR) show neither his knowledge that the source was a felon, nor any reason for him to suspect that the source intended to use the weapons unlawfully. We review *de novo* the district court's application of the Guidelines, and we review its factual findings for clear error. United States v. Birdine, 515 F.3d 842, 845 (8th Cir. 2008). Because we conclude that the facts presented here satisfy the unlawful use prong, we need not decide whether Lomax knew that the source was a felon.

Based on the circumstances known to Lomax at the time of the sale, he had reason to believe that the source intended to use the weapons unlawfully. See United States v. Asante, 782 F.3d 639, 644 (11th Cir. 2015) (holding that knowledge of intent was not required if the circumstances gave the defendant reason to believe that the weapons would be used unlawfully). Neither the automatic firearm nor the hand grenade was registered with the National Firearms Registration and Transfer Record, as required by law. See 26 U.S.C. § 5861(d). This fact alone rendered possession of the weapon by both Lomax and the confidential source "necessarily unlawful." United States v. Pepper, 747 F.3d 520, 525 (8th Cir. 2014). Moreover, the nature of the sale was clandestine. See United States v. Juarez, 626 F.3d 246, 252 (5th Cir. 2010) (concluding that the clandestine nature of a transaction involving military-style assault weapons supported an inference of unlawful intent); see also United States v. Freeman, 640 F.3d 180, 189 (6th Cir. 2011) (deciding that there was evidence of

unlawful intent when the defendant exchanged guns for drugs in the wee hours of the morning). Lomax and the source met in their vehicles in the middle of an open field near a chemical plant. They exchanged $1,000 in cash for unregistered, highly dangerous, military-style weapons that were concealed in a tool case. Based on the nature of the weapons and the circumstances under which they were exchanged, Lomax had reason to believe that the confidential source, whose mere possession of the weapons was unlawful, also intended to use the weapons unlawfully.

The sentence is affirmed.

KELLY, Circuit Judge, dissenting.

The firearms trafficking enhancement, USSG § 2K2.1(b)(5), applies only under specific circumstances. It is applicable if the defendant "knew or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to" one of two types of individuals: "(I) [an individual] whose possession or receipt of the firearm would be unlawful; or (II) [an individual] who intended to use or dispose of the firearm unlawfully." USSG § 2K2.1 cmt. n.13(A)(ii). Each of these two subparts has its own narrow set of requirements.

The district court concluded that Lomax's conduct satisfied subpart (I), the "possession" prong. In order for the possession prong to apply, the type of "individual" whose possession or receipt of the firearm would be unlawful is limited: The defendant must know or have reason to believe the individual is one "who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. cmt. n.13(B). The district court reasoned that this prong applied because Lomax sold the firearms to a "known felon."

-4-

The court does not rely on this rationale to affirm application of the § 2K2.1(b)(5) enhancement, and neither would I. There is no evidence that Lomax knew or had reason to believe he was selling firearms to a "known felon," much less someone with one of the specific predicate felony convictions required to trigger application of the possession prong. The district court apparently relied on testimony from an FBI agent that the buyer had "been a convicted felon for quite a while," but there was no evidence that Lomax knew, or should have known, this fact. There is also nothing in the record about the nature of the purchaser's prior conviction. See United States v. Francis, 891 F.3d 888, 898 (10th Cir. 2018) (vacating sentence where there was no evidence defendant "had reason to believe that the [purchaser] had a conviction in one of the listed categories of offenses").

Instead, the court concludes that Lomax satisfied subpart (II)—the "use" prong of the enhancement—in part because two of the firearms in question were unregistered. But a purchaser's desire to *possess* an unregistered firearm is not sufficient to infer that the purchaser "intend[s] to *use* . . . the firearm unlawfully." USSG § 2K2.1 cmt. n.13(A)(ii)(II) (emphasis added). "Use" and "possess" have different meanings. "Use" means "to put into action or service" or to "employ" the object in question, *Use*, Merriam-Webster's Collegiate Dictionary (11th ed. 2012), which is distinct from mere possession. "Use" and "possess" appear in § 2K2.1 multiple times; inclusion of both terms would be unnecessary if they were interchangeable. See, e.g., USSG § 2K2.1(b)(6)(B) ("If the defendant . . . used or possessed . . . ."); USSG § 2K2.1(c)(1) ("If the defendant used or possessed . . . ."). Otherwise subpart (I) of the enhancement is rendered superfluous. The possession of a firearm by a person with almost any felony conviction—not just one of the listed types that trigger application of subpart (I)—is unlawful. See 18 U.S.C. § 922(g)(1). If any unlawful possession can trigger the "use" prong, then any activity that would satisfy subpart (I) would also constitute unlawful "use" under subpart (II).

In Bailey v. United States, 516 U.S. 137 (1995), the Supreme Court analyzed the phrase "uses or carries a firearm" in 18 U.S.C. § 924(c)(1). In a unanimous opinion, the Court stated unequivocally that "'use' must connote more than mere possession of a firearm." Id. at 143.[2] Looking to the word's ordinary definition, the Court reasoned that "'use' impl[ies] action and implementation." Id. at 145. Like the trafficking enhancement, § 924(c)(1) employs the term "use" in close proximity to other terms that would be rendered superfluous if "use" encompassed mere possession. Id. at 145–46. "Use" of a firearm, the Court concluded, requires the firearm to be "actively employed." Id. at 147. The Guidelines do not provide a contrary definition of "use," and the distinction between "use" and "possession" applies with equal force in § 2K2.1. See also USSG § 2A4.1, cmt. n.2 ("'A dangerous weapon was used' means that a firearm was discharged, or a 'firearm' or 'dangerous weapon' was 'otherwise used' (as defined in [§ 1B1.1])."); USSG § 1B1.1, cmt. n.1(I) (2016) ("'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.").

The plain meaning of "use" means that subpart (II) cannot apply just because the purchaser sought to possess an unregistered firearm.[3] The government must present some evidence about what the defendant knew regarding the purchaser's plans for the firearm. This burden is not onerous. The enhancement applies if there is evidence sufficient to infer, by a preponderance, that the defendant should have

---

[2]In response to Bailey, Congress amended the statute to add the word "possesses" in *addition* to "uses or carries." See United States v. O'Brien, 560 U.S. 218, 232–33 (2010) (discussing amendment). This only reinforces the conclusion that "possess" means something different than "use."

[3]Under the plain language of subpart (I), knowledge that the firearm is unregistered would not be sufficient to satisfy the possession prong either.

known that the purchaser intended to use the firearm in connection with some other criminal activity.  See, e.g., United States v. Stebbins, 523 F. App'x 1, 5 (1st Cir. 2013) (Souter, J.) (application of enhancement was proper where evidence showed "the defendant was planning to give these firearms to people he knew were drug dealers"); Freeman, 640 F.3d at 189 ("[Defendant's] sale of firearms to his heroin dealer in the wee hours of the morning in exchange for heroin and cash gave him reason to know or have reason to believe that his heroin dealer 'intended to use or dispose of the firearm unlawfully.'"); Juarez, 626 F.3d at 252 (affirming application of enhancement where defendant acted as a straw purchaser, "purchased over two dozen weapons, most of them military-style assault rifles, and delivered them to a man she knew only by a nickname").

Here, the government "never identified . . . what illicit use [Lomax] might believe [the purchaser] would make of the [firearms]," making application of the enhancement improper.  United States v. Harris, 719 F. App'x 946, 950 (11th Cir. 2018) (per curiam); see also United States v. Green, 360 F. App'x 521, 525 (5th Cir. 2010) (per curiam) (vacating sentence where "[t]he record is silent about what [the defendant] knew, or had reason to believe, with regard to [the purchasers'] plans for the guns").  Although the court characterizes the sale as "clandestine," the facts underlying that characterization are not sufficient to show that Lomax had reason to believe that the purchaser intended to "use" the firearms in some unlawful manner, as opposed to merely possess them.

Accordingly, I respectfully dissent.

_____