# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-20569

———————

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2025

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAVID LARA

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-364-1

———————————————————————

Before JONES and OLDHAM, *Circuit Judges*, and HENDRIX, *District Judge*.[*]

PER CURIAM:[†]

After working with a straw purchaser and being caught on the way to the U.S.–Mexico border with eight AK-47-style firearms and almost 2,000

———————————————

[*] United States District Judge of the Northern District of Texas, sitting by designation.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under limited circumstances set forth in the 5th Circuit Rule 47.5.4.

No. 23-20569

rounds of ammunition, David Lara pleaded guilty to aiding and abetting a false statement during the acquisition of a firearm.  At sentencing, the district court applied a four-level enhancement to his offense level because of its finding that the defendant engaged in the trafficking of firearms.  Lara appeals, contending that the district court clearly erred in finding that Lara had sufficient knowledge that his trafficking would result in the unlawful use or possession of the firearms for the enhancement to apply.  We AFFIRM.

I

In August 2019, local law enforcement conducted a traffic stop in Robstown, Texas, which lies between Houston and Brownsville.  Authorities stopped Lara, his common-law wife, and their two children.  In the vehicle they found eight AK-47-style firearms, 1,762 rounds of ammunition, and multiple magazines.  These weapons are the "firearms of choice of Mexican drug cartels."

Federal authorities questioned Lara, who informed the agents that he brought the firearms to shoot with his cousin in Brownsville, which is on the U.S.–Mexico border.  But when agents spoke with Lara's wife, she contended that she did not know that the firearms were in the vehicle or why Lara was taking them to Brownsville.  She further asserted that the family intended to spend a few days in the Rio Grande Valley, though law enforcement found no extra clothes or other supplies in the vehicle.  Investigators seized the firearms and ammunition.

Officials traced one of the eight firearms to Rodrick Lavallais, who had purchased the weapon nine days before the stop.  Officials had been investigating Lavallais for suspicious firearms purchases.  Over an approximately 28-month period overlapping with the stop, Lavallais purchased over 100 firearms.

Approximately eight weeks after the stop, a joint task force saw Lavallais entering the same vehicle that was involved in the traffic stop. Lara drove Lavallais to a gun store and then a pawn shop, where Lavallais purchased three firearms. Lara dropped Lavallais off at a residence, and Lavallais left an AK-47-style firearm in Lara's car. Law enforcement stopped Lara and found that firearm in his vehicle. They subsequently searched Lara's apartment, where they found ammunition and firearm parts and accessories. In a subsequent interview, Lara gave conflicting accounts of how and where he purchased the firearms.

A grand jury indicted Lara for aiding and abetting a false statement during the acquisition of a firearm. *See* 18 U.S.C. §§ 2, 922(a)(6). Lara pleaded guilty to that charge. Over the defendant's objection, the district court applied a four-level enhancement to Lara's offense level, finding that he engaged in the trafficking of firearms. Including the four-level enhancement at issue here, the district court concluded that Lara had a total offense level of 25 and a criminal history category of I, resulting in a guideline range of 57 to 71 months' imprisonment. The district court departed downward and sentenced Lara to 50 months' imprisonment.

## II

We review the district court's interpretation and application of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010). Whether Lara had reason to believe that someone would illegally use a firearm that he transported or transferred is a question of fact. *Id.* at 251–52. When reviewing for clear error, we will affirm the district court's finding unless we are left with "the definite and firm conviction that a mistake has been committed." *United States v. Longoria*, 958 F.3d 372, 375 (5th Cir. 2020) (quoting *United States v. Mata*, 624 F.3d 170, 173 (5th Cir. 2010) (per curiam)). The government must

prove sentencing enhancements by a preponderance of the evidence. *Juarez*, 626 F.3d at 251.

Under the sentencing guidelines, a court is to increase by four levels the offense level of a defendant who engaged in the trafficking of firearms. USSG § 2K2.1(b)(5) (2021). The guideline commentary provides that this enhancement applies if the defendant (1) "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual," and (2) "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual" whose possession or receipt of the firearm would be unlawful or who intended to use or dispose of the firearm unlawfully. USSG § 2K2.1, comment. (n.13) (2021).

The government can prove the defendant's knowledge of unlawfulness through circumstantial evidence. *Juarez*, 626 F.3d at 256. This Court has deemed the "number of weapons, their type, and the circumstances surrounding" the relationship between the defendant and a receiving party as relevant evidence in applying this enhancement. *Id.* at 252. Lara does not contest the district court's underlying factual findings. Instead, he asserts that these facts were insufficient to find that he had reason to know that the receiver's possession or receipt would be unlawful or that the receiver intended to use or dispose of the firearm unlawfully.

The Court disagrees. The facts in this case lead the Court to conclude that the district court did not clearly err. The circumstances surrounding the authorities' discovery of the firearms support the district court's factual finding. Authorities found Lara in a town relatively near—and certainly on the way to—the border with eight AK-47-style firearms that are typically associated with Mexican drug cartels. In addition to those eight firearms,

Lara also possessed over 1,700 rounds of ammunition and multiple magazines. And he acquired at least one of these firearms from a straw purchaser.

Lara's attempts to explain the situation were futile and further support the district court's finding. Lara first alleged that he was taking the firearms and ammunition to go shooting with his cousin. But when authorities questioned Lara's wife, she claimed to have no knowledge of Lara's purported plan and provided a different explanation—a family trip. Neither explanation was plausible, as authorities found no supplies in the vehicle that would be consistent with a multi-day family trip. Lara further undermined his story in his second interview with authorities when he gave conflicting explanations for the source of the firearms.

Left with the circumstances of the stop, the straw purchase, lies from Lara and his wife, and no alternative explanation to account for the number of weapons in his car in that area, the district court was reasonably left with the most plausible scenario—that Lara was en route to sell the firearms into an illegal ring near the border, where he should have known that the eventual recipient's use or possession would be illegal.

Lara's comparison to the facts in *Juarez* does not undermine this Court's conclusion. In that case, this Court affirmed the application of the trafficking enhancement because the defendant was the straw purchaser of firearms for a mysterious man as part of a series of interactions that presented various causes for concern distinct from those here. *See id.* at 252. To be sure, both cases involved a straw purchaser, AK-47-style weapons, and took place near or on the way to an area near the border. *See id.* at 249–50. But the facts in *Juarez* lacked some circumstances that exist in this case that bolster the government's contentions, such as the inconsistent stories that Lara and his wife told to disguise their true motives. Even accepting Lara's

attempt to distinguish the facts here from *Juarez*, nowhere in the latter did this Court state that those circumstances were necessary; they were merely sufficient.

Lara also relies on *United States v. Green*, 360 F. App'x 521 (5th Cir. 2010), but that case is inapposite and non-precedential. There, this Court held that the district court clearly erred in applying the enhancement where the only evidence was that the defendant bought the firearm to take it into Mexico where those guns are not sold, that the defendant did not know the ways in which the recipient of the gun would use it, and that drug-trafficking organizations frequently use guns. *Id.* at 523. The evidence in this case is far more compelling. Lara's use of a straw purchaser, his inconsistent and undermined explanations to the authorities in multiple interactions, the location, and the substantial quantity of ammunition and AK-47-style firearms all present circumstantial evidence of Lara's knowledge materially greater than the evidence in *Green*.

\* \* \*

Given the significant amount of evidence before the district court, we are not left with "the definite and firm conviction that a mistake has been committed." *Longoria*, 958 F.3d at 375 (quoting *Mata*, 624 F.3d at 173). The judgment of the district court is AFFIRMED.