# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 27, 2025

Lyle W. Cayce
Clerk

————————

No. 23-11020

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Rondell Jones,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CR-152-1

———————————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Following his guilty plea conviction, the district court sentenced Rondell Jones within-guidelines to 108 months' imprisonment, followed by three years of supervised release. In sentencing Jones, the district court applied a four-level trafficking enhancement pursuant to U.S.S.G. § 2K2.1(b)(5). Jones now appeals his sentence. Because the record supports the district court's application of the enhancement, we AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-11020

## I. FACTUAL & PROCEDURAL BACKGROUND

In February 2023, the Bureau of Alcohol, Tobacco, Firearms, and Explosives began an investigation into a group of individuals known to possess and sell narcotics and firearms in the Fort Worth area. Over a month-long period, two undercover officers ("UCs") purchased firearms from various individuals in the group, including Jones. Relevant here, one of the UCs met Jones, spoke to him on the telephone, and arranged to purchase firearms from him on March 8 and 28, 2023. The UC then arranged a third sale with Jones for a loaded .40 caliber pistol on April 5, 2023. Investigators arrested Jones as he met with the UC to complete the third sale. Following his arrest, Jones was placed into federal custody where he has since remained. Jones waived indictment and pleaded guilty to one count of possession of a firearm by a convicted felon. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8).

The Presentence Investigation Report ("PSR") detailed the March 28 meeting between Jones and the UC, including a statement from the UC to Jones that he planned to take the firearms he purchased from Jones to Mexico. Based on the UC's statement referencing Mexico, the probation officer recommended applying a four-level enhancement to Jones's sentence pursuant to U.S.S.G. § 2K2.1(b)(5) (2021). Section 2K2.1(b)(5) provides for an enhancement if the defendant engaged in firearms trafficking. The application note to § 2K2.1(b)(5) states, in relevant part, that the enhancement should be applied if the defendant "transported, transferred, or otherwise disposed of two or more firearms to another individual" and the defendant knew or had reason to believe that his conduct "would result in the transport, transfer, or disposal of a firearm to" an individual whose receipt of the firearm would be unlawful or an individual "who intended to use or dispose of the firearm unlawfully." § 2K2.1(b)(5), cmt. n.13 (2021). Combined with an offense level of 25 and a criminal history category of V, Jones's guidelines imprisonment range with the enhancement was 100 to 125

months. Without the enhancement, Jones's guidelines imprisonment range would have been 70 to 87 months.

Jones objected to the § 2K2.1(b)(5) enhancement, arguing that the UC referred to his "people" but never told Jones that the firearms would be transported to Mexico. Jones further objected because the UC never stated where his people were located, that they would be the ultimate recipients of the firearms, that it would be unlawful for them to possess or receive firearms, or that the UC's intended use or disposition of the firearms would be unlawful. Jones alleged that a video recording of the interaction between himself and the UC on March 28 supported his objection. Thus, he maintained that the enhancement should not apply because he did not know or have a reason to believe that the firearms he sold to the UC would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt would be unlawful or an individual who intended to use or dispose of the firearm unlawfully.

The probation officer partially accepted Jones's objection on grounds that the recording and the investigative report provided conflicting information. However, the officer amended the PSR to insert a new paragraph, stating in part:

> On March 14, 2023, the UC and Jones engaged in a telephone conversation wherein the UC stated they were from California and referred to the area they conducted business in as "the bay." The UC stated they received triple the money "out here" referring to California and selling firearms. Further in the conversation, the UC and Jones discussed the price of firearms, and the UC explained they were trying to make good money "out here" otherwise the UC had to "send them down to Mexico" referring to trafficking firearms to Mexico. Jones then acknowledged this statement and they proceeded to negotiate the future purchase of firearms.

Based on this information, the probation officer concluded that Jones "was made aware by the UC the firearms may be sent to Mexico if the UC did not get a 'good deal'" locally. In response to the addendum, the Government shared the recording of the March 14 telephone call with defense counsel and contended that the call supported the trafficking enhancement because the UC told Jones that he could send the guns to Mexico.

Jones objected to the addendum containing the new paragraph and renewed his objection to the trafficking enhancement, arguing that the Government did not provide sufficient facts to support the enhancement because both parties were talking at the same time during the recording. Further, Jones asserted that even if he did hear the UC mention Mexico, it was only a contingency if the negotiated price was insufficient for the UC to make the trip to Texas. Jones further pointed out that the telephone call that the Government relied on to support the enhancement had been transcribed and the transcriber listed the part of the transcript where the UC allegedly referenced Mexico as "inaudible." Defense counsel further averred that he had to listen to the recorded conversation several times "to hear even the mention of Mexico" and to do that he had to "slow the recording down." Jones thus contended that there was nothing in the record to support that he knew or had reason to believe that the UC intended to use or dispose of the firearms unlawfully by taking them to Mexico.

After hearing from both parties, the district court adopted the statement of facts made in the PSR, overruled Jones's objections, and concluded that the evidence in the record supported the trafficking enhancement. The district court further stated that it had considered all of the factors in 18 U.S.C. § 3553(a), the advisory Sentencing Guidelines, and the conduct that Jones had admitted. It then sentenced Jones within the guidelines range to a term of 108 months of imprisonment, to run consecutively to any future sentence imposed in state court for an unrelated

offense, followed by three years of supervised release. The district court explained that even without the Guidelines, Jones's 108–month sentence was warranted to avoid sentencing disparities with the other defendants involved in the scheme. It further reasoned that Jones's sentence was appropriate because he had three prior drug and three prior firearm convictions, and his criminal behavior was apparently undeterred by his past imprisonment for those convictions. Jones appealed.

## II. Discussion

On appeal, Jones challenges the district court's application of the four-level trafficking enhancement under § 2K2.1(b)(5). He contends that the district court clearly erred by applying the enhancement because the Government failed to demonstrate that he knew or had reason to believe that (1) the UC actually said he would send the firearms to Mexico; (2) it would be unlawful for the UC to send the firearms to Mexico; and (3) the UC intended to send the firearms to Mexico.

The Government counters that the trafficking enhancement should apply because Jones's assertion that he did not hear the UC say that the guns might be sent to Mexico does not overcome the district court's finding that he did. Additionally, the Government argues that because the Guidelines do not require absolute certainty on Jones's part, it is sufficient for purposes of applying the enhancement that he had "reason to believe" that the firearms would be transported to Mexico. Alternatively, the Government points out that regardless of any mention of Mexico, Jones knew that the UC regularly trafficked firearms for a profit but had no reason to believe that the UC was a federally licensed firearms dealer.[1] Thus, Jones knew, or had reason to believe, that he was selling firearms to a buyer who "intended to use or

_____

[1] 18 U.S.C. § 922(a)(1)(A).

dispose of [the] firearm[s] unlawfully." Finally, the Government asserts that if a guidelines error has occurred, any error was harmless because the district court stated that it would have imposed the same sentence due to Jones's criminal history and to avoid a sentencing disparity with the other scheme participants. The Government has the better argument.

A district court's interpretation and application of the Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Id.* "[I]n determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (internal quotation marks and citation omitted). The determination of whether § 2K2.1(b)(5) should apply is a factual finding that this court reviews for clear error. *United States v. Juarez*, 626 F.3d 246, 251–52 (5th Cir. 2010).

"When making factual findings for sentencing purposes, district courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (internal quotation marks and citation omitted). Generally, the district court may adopt the facts in a PSR without additional inquiry "if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (internal quotation marks and citation omitted). The defendant has the burden to demonstrate that the PSR's information is "materially untrue." *Id.* (internal quotation marks and citation omitted).

In support of his argument against application of the enhancement, Jones relies on two prior decisions of this court, *United States v. Green*, 360 F. App'x 521 (5th Cir. 2010) (unpublished) and *Juarez*, 626 F.3d 246. According to Jones, the facts in *Green* (where a panel of this court vacated the defendant's trafficking enhancement) and *Juarez* (where a panel of this court affirmed the defendant's trafficking enhancement) cut against application of the trafficking enhancement in his case because his conduct more closely resembles that of the defendant's in *Green*, as opposed to the defendant's in *Juarez*. We disagree.

In *Green*, the defendant bought five Beretta pistols in Texas and smuggled them into Mexico for her common-law husband and another individual. 360 F. App'x at 522. The district court applied the trafficking enhancement based on its findings that the guns could not be obtained in Mexico, it was common knowledge that guns are predominantly used by drug trafficking organizations, and Green did not buy the guns and give them to someone she knew would use them for innocent purposes. *Id.* at 523. A panel of this court vacated Green's sentence and remanded for resentencing, reasoning that "[a]lthough Green admitted that she bought the firearms in question and knew her actions were illegal, the record [was] devoid of any evidence showing that she knew or had reason to believe that [the individuals] intended to use or dispose of the firearms unlawfully." *Id.* at 525.

To the contrary, in *Juarez*, a panel of this court affirmed the district court's application of the § 2K2.1(b)(5) enhancement. 626 F.3d at 248, 256. There, the panel noted as particularly relevant the clandestine nature of the defendant's dealings with a man known only to her as "El Mano," the large number of weapons sold, the fact that most of the weapons were military-style assault rifles, and the fact that the defendant was paid $200 above the retail cost of each of the weapons. *Id.* at 252. Based on those facts, the panel concluded that there was "considerable evidence from which the district

court could infer that [the defendant] knew or had reason to believe that her conduct would result in the transport, transfer, or disposal of a firearm to an individual who intended to use or dispose of the firearm unlawfully." *Id.*

Contrary to Jones's contentions on appeal, his arguments against the application of the § 2K2.1(b)(5) trafficking enhancement are not supported by this court's analyses in *Green* and *Juarez*. At their first meeting, which took place in an Applebee's parking lot, Jones sold the UC three loaded handguns, one of which had an extended magazine, and ammunition. The UC paid Jones $1,900 for the firearms. During the meeting, the UC told Jones that he regularly trafficked firearms and could complete weekly purchases. One of the firearms that the UC purchased from Jones had been reported as stolen days before the sale. About a week later, the UC called Jones to arrange another transaction. It was during this conversation that the UC mentioned that he may have to send the firearms to Mexico if he did not get a good deal with Jones. The UC explained to Jones that they were trying to make "good money 'out here'" but if they did not, the UC would need to "send them down to Mexico." The March 28 purchase was also made in the parking lot of Applebee's, at which time the UC purchased two loaded firearms for $2,200, paying Jones additional money for extended magazines.

Jones consistently urges on appeal that the application of the enhancement is not warranted because he did not hear the UC reference Mexico during the firearms transactions. But even if true, that does not end our inquiry because the enhancement is still adequately supported by other record evidence. Given the secretive nature of the sales between Jones and the UC in restaurant parking lots, Jones's lack of knowledge about the UC, the report verifying that one of the firearms sold by Jones had been stolen, the number of firearms that Jones sold, the UC's statement regarding making a profit on future sales of the firearms, and the extended magazines involved in the transactions, Jones's conduct in this case aligns more closely to that of

the defendant's in *Juarez*, as opposed to the defendant's in *Green*.[2] Consequently, we conclude that the district court did not clearly err in applying the enhancement because the record supports that Jones knew or had reason to believe that his conduct "would result in the transport, transfer, or disposal of a firearm to" an individual whose receipt of the firearm would be unlawful or an individual "who intended to use or dispose of the firearm unlawfully." *Juarez*, 626 F.3d at 252; § 2K2.1(b)(5), comment. (n.13) (2021).

Moreover, even if the district court did err in applying the enhancement, we agree with the Government that any error was harmless. As we have explained, a sentencing error is harmless if the district court considered both the correct and incorrect guidelines ranges and stated that it would impose the same sentence under either range or, if the correct guidelines range was not considered, the district court would have imposed the same sentence for the same reasons notwithstanding the error. *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017).

Here, in the proceedings below, defense counsel set out the lower guidelines range that he argued applied to Jones in an objection to the PSR and the probation officer later referred to that lower range in response to the objection. The district court then recounted at sentencing that it had

---

[2] Jones also cites to the Seventh Circuit's opinion in *United States v. Moody*, 915 F.3d 425 (7th Cir. 2019) in support of his argument against the applicability of the trafficking enhancement. However, for the same reasons we reject Jones's arguments under *Green*, we also reject his arguments under *Moody*. Although the *Moody* court vacated the district court's application of the trafficking enhancement in that case, it was because "[n]othing in the record suggest[ed] that Moody had reason to believe that his buyers were unlawful gun users or possessors." *Id.* at 427. But here, as we have explained, the record plainly belies Jones's claim that he sold multiple firearms, one of which was later reported stolen, to individuals he barely knew, in the parking lot of Applebee's, for what he believed to be innocent and lawful purposes.

"considered the conclusions expressed by the probation officer in the presentence report with regards to the appropriate guideline calculations," and determined that the applicable guidelines range was 100 to 125 months. In imposing the 108-month sentence, the district court stated that it had considered all the factors in 18 U.S.C. § 3553(a), the advisory Sentencing Guidelines, and Jones's admitted conduct. The district court then reasoned, "I did find the [G]uidelines to be sufficient in this case, but even if we didn't have the [G]uidelines, I still would have felt that a 108-month sentence was appropriate because it is sufficient, but not greater than necessary to comply with the purposes set forth under paragraph 2 of § 3553(a)." The district court further observed:

> In crafting the sentence today, I had several things in mind. I was trying to avoid sentencing disparities among the other defendants in this scheme. But I think it's also worth noting that Mr. Jones is only 28, but he has an established habitual pattern in committing crimes extending over a seven-year period. His criminal history outlines three drug and three firearm convictions, wherein [Jones] either possessed drugs or unlawfully carried or stole a firearm. He's been afforded three opportunities for deferred adjudication, which ultimately became terms of imprisonment due to his failure to follow the terms of probation. He's only received minimal terms of imprisonment and he's not been deterred by his continuing reincarceration from continuing his criminal behavior. So, I did feel like 108 months was sufficient in this case. I think there was a good argument I could have upwardly varied or departed. But I took into account the statements and arguments that we heard today on his behalf.

Additionally, because the 108-month sentence was neither the lowest nor the highest under the Guidelines, there is evidence that the district court imposed the sentence irrespective of the guidelines calculation. For these reasons, the record indicates that the district court would have imposed the

No. 23-11020

same sentence regardless—even if it erred in calculating the guidelines range. *See Guzman-Rendon*, 864 F.3d at 411. Thus, to the extent the district court erred in imposing Jones's sentence, we hold that any error was harmless. *Id.*

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Jones's sentence.